**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

THE DEMOCRATIC PARTY OF
GEORGIA, INC., AND AFG GROUP
INC,

      PLAINTIFFS,

   V.

ROBYN A. CRITTENDEN, IN HER
OFFICIAL CAPACITY AS
SECRETARY OF STATE OF THE
STATE OF GEORGIA; STEPHEN
DAY, JOHN MANGANO, ALICE
O'LENICK, BEN SATTERFIELD,
AND BEAUTY BALDWIN, IN
THEIR OFFICIAL CAPACITIES AS
MEMBERS OF THE GWINNETT
COUNTY BOARD OF
REGISTRATION & ELECTIONS;
AND MICHAEL COVENY,
ANTHONY LEWIS, LEONA
PERRY, SAMUEL TILLMAN, AND
BAOKY VU, IN THEIR OFFICIAL
CAPACITIES AS MEMBERS OF
THE DEKALB COUNTY BOARD
OF REGISTRATION & ELECTIONS,

      DEFENDANTS.

Civ. Act. No. _____

**EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND**
**INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs are substantially likely to succeed on the merits of all their claims. Without injunctive relief, which is in the public interest and which does not disfavor the government Defendants, Plaintiffs and their members and supporters will be irreparably harmed in the following ways.

First, absentee mail-in voters whose ballots are rejected under O.C.G.A. § 21-2-386(a)(1)(C) solely due to missing or insufficient oath information are unconstitutionally deprived of their right to vote. Second, the cure period provided by O.C.G.A. § 21-2-419(c) to cure and count provisional ballots, "three days following the primary or election," is constitutionally inadequate, particularly where particularly given the irregularities this year, when over 26,000 ballots remained uncounted as of yesterday. *See* Team Abrams (@TeamAbrams), https://twitter.com/teamabrams/status/1061711904534618113 (Nov. 11, 1506) (stating in excess of 26,000 outstanding votes); Lauren Groh-Wargo (@gwlauren), https://twitter.com/gwlauren/status/1061700443372445696 (Nov. 11, 2018 14:21) (referring to more than 5,000 votes reported from Georgia counties having previously stated 100% of votes were reported).[1] Third, the bar against counting

_____

[1] Plaintiffs understand that elections division director for Defendant Crittenden, Chris Harvey, has testified in *Common Cause Georgia v. Kemp,* No. 1:18-cv-5102-AT (N.D. Ga.), that the number of provisional ballots cast was approximately 21,000. Plaintiffs expressly dispute the accuracy of that figure.

KH510839.DOCX 3

provisional votes cast in a county other than the voter's residence as recorded in voter registration records, *see* O.C.G.A. §§ 21-2-218, 418, 419, is constitutionally inadequate, as it deprives the voter of due process of law under the Fourteenth Amendment and the fundamental right to vote. Specifically, the voter has not in this November 6, 2018 General Election had sufficient opportunity to show that their registration address has changed through no fault of their own, but due to flaws in the administrative procedure or carelessness of state or county agencies or employees.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs therefore move for emergency injunctive relief[2] to secure their rights and privileges guaranteed by the Fourteenth Amendment to the United States Constitution, the First Amendment to the United States Constitution, and the laws of the United States. In particular, Plaintiffs seek a hearing on this Motion and then an Order[3]:

---

[2] Plaintiffs specifically request the Court to waive its usual procedures, LR 65.2, NDGa, and the standard time requirements of this District. LR 7.2B, NDGa. Plaintiffs have notified Defendants of the Complaint and this Emergency Motion, and have provided copies of each and all accompanying material via electronic mail to known counsel. Plaintiffs will expeditiously serve Defendants with process as soon as a case number is assigned to the above-captioned matter.

[3] Pursuant to Rule 65(d), Plaintiffs file a proposed order contemporaneously with this Motion directed at the persons to be bound thereby, stating the reasons why the order should issue and the terms of the order specifically, including the acts restrained and required.

KH510839.DOCX 3

1. That the Court immediately issue an order enjoining Defendants and all members of the Defendant Class from certifying county or statewide election returns for the November 6, 2018 General Election prior to Wednesday, November 14, 2018 at 9:00 pm;

2. That the Court issue an order and judgment declaring federal and Georgia law to require county registrars to accept absentee mail-in ballots cast in the November 6, 2018 General Election on which the voter provided missing or insufficient oath information, where that missing or insufficient information does not substantially obstruct the county registrar from verifying the identity of the absentee voter;

3. That the Court issue an order and judgment that counties accept evidence curing provisional ballots cast in the November 6, 2018 General Election, and that counties count ballots so cast and cured as set forth in O.C.G.A. § 21-2-419, through Wednesday, November 14, 2018 at 5:00 p.m.;

4. That the Court issue an order and judgment that Defendants DeKalb County and Gwinnett County, and all similarly situated counties, treat provisional ballots cast in the November 6, 2018 General Election by a voter registered in another county as if they had cast ballots within the wrong precinct of the same county as described by O.C.G.A. § 21-2- 419(c)(2);

5. That the Court issue an order and judgment that, as to the Defendant Class that has already certified election results, directing the Class to restore the votes of qualified electors as specified by this Court, and to certify and file corrected returns with Defendant Crittenden; and

6. That the Court issue an order and judgment enjoining Defendant Crittenden from refusing to accept any corrected election returns certified and filed by a county elections superintendent in response to an order of this Court.

## **LEGAL STANDARDS**

"Before a court will grant a motion for a TRO, the moving party must establish that: (1) "it has a substantial likelihood of success on the merits," (2) it will suffer irreparable injury if the relief is not granted, (3) the threatened injury outweighs the harm the relief may inflict on the non-moving party, and (4) entry of relief "would not be adverse to the public interest." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d

KH510839.DOCX 3

> 1261, 1268 (11th Cir. 2006). "The likelihood of success on the merits is generally considered the most important of the four factors." *Jangsoo Indus. Co. v. Jangsoo Furniture Land, Inc.*, No. 1:10-cv-1225, 2011 U.S. Dist. LEXIS 14219, at *6 (N.D. Ga. Feb. 11, 2011) (Batten, J.), citing *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986)."

*Kharazmi v. Bank of Am., N.A.*, No. 1:11-CV-2933-AT, 2011 WL 13221071, at *1 (N.D. Ga. Sept. 2, 2011).

Though discovery in this case has not opened and the Defendants have not answered the Complaint, this Motion is not premature. "The grant of a temporary injunction need not await any procedural steps perfecting the pleadings or any other formality attendant upon a full-blown trial of this case*." United States v. Lynd*, 301 F.2d 818, 823 (5th Cir. 1962) (Tuttle, J.).

In considering this Motion, the Court also is permitted to rely upon hearsay and upon affidavits in lieu of live testimony. "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (at the "preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction").

KH510839.DOCX 3

4

## ARGUMENT AND CITATION OF AUTHORITIES

**A. Plaintiffs are Substantially Likely to Succeed on Their Argument That Rejecting Absentee Mail-in Ballots With Missing or Insufficient Oath Information Is An Unconstitutional Application of O.C.G.A. § 21-2-386(A)(1)(c)**

Plaintiff is likely to succeed on their claims that it is unlawful for Defendants to refuse to reinstate the votes of every individual who submitted an absentee ballot that was rejected because the elector omitted or stated the wrong date of birth. The Georgia Supreme Court has already held that it is reversible error to reject an absentee ballot solely based on missing birthdate information. *See Jones v. Jessup*, 249 Ga. 531, 533 n.5 (2005) (citing O.C.G.A. § 21-2-386(a)(1)(C)).  As a matter of law, the State Elections Board has directed elections officials that "rejecting absentee ballots solely based on missing birthdate information violated federal law."  *See* Complaint, Ex. 2 ("the omission of the additional information of residence address and/or day and month of birth would not be material to that voter's qualifications and the absentee ballot should be counted"), Ex. 3 (same). Indeed, the Voting Rights Act forbids the elevation of form over substance in rejecting absentee ballots solely due to missing address or birthdate information.

After applying for and receiving an absentee ballot, the voter completes and places the completed absentee ballot in the smaller envelope and seals it. The larger envelope includes an oath swearing to eligibility that contains several blanks

for the voter to complete prior to mailing. O.C.G.A. §§ 21-2-384(b), (c), 385(a).

The oath requires the voter to provide certain information, including her residential

address, year of birth, and signature. O.C.G.A. § 21-2-384(c)(1); *see also* Exhibit 1

to Complaint (copy of absentee mail-in ballot envelope containing oath used in

Gwinnett County for the Election).[4]

Gwinnett County elections officials nonetheless have consistently rejected

absentee ballots cast in the Election that do not contain the voter's address or the

voter's date, month, or year of birth, even though that information is irrelevant to

confirming the voter's identity. 283,839 voters attempted to vote absentee by mail

in the Election. See November 7, 2018 Voter Absentee File, available at

http://elections.sos.ga.gov/Elections/voterabsenteefile.do. 30,302 of those voters

cast their ballot in Gwinnett County. *Id.*

As of November 9, 2018, Plaintiffs understand that Gwinnett County

elections officials had rejected at least 1,186 absentee mail-in ballots, with 1,095 of

those absentee ballots having been rejected for the following reasons:

- Year of birth missing;
- Year of birth not a match;
- Current year as year of birth;
- Res[idential] Addr[ess] not a match;

---

[4] Election forms and information must be given in English and in Spanish in
Gwinnett County under Section 203 of the Voting Rights Act of 1965, as amended.

- Res[idential] Addr[ess] and year of birth missing; and
- Insufficient Oath Information

A voter can address the rejection of her absentee mail-in ballot for missing or insufficient oath information only if she receives notice of the rejection and an opportunity to apply for another absentee mail-in ballot to vote again – itself a burdensome and unnecessary process – or to vote in-person to ensure she casts a ballot that will be accepted and counted.  There is no provision in Georgia law that requires a county to notify voters whose absentee mail-in ballots are ejected for reasons of missing or insufficient oath information with enough time to cure the alleged deficiency. For ballots received on or shortly before Election Day, the only cure lies in the hands of the election officials doing the counting.  This is clearly too late for any voter whose ballot was rejected to have an opportunity to cure the immaterial flaw unless Gwinnett (and other) county elections officials proactively seek to cure the problems.

An absentee mail-in voter who does not record the information requested by the oath on her outer mailing envelope does not even have the same opportunity to cure her ballot as a provisional voter has, as a provisional ballot can be cured within three days of the close of the polls. See O.C.G.A. §§ 21-2-417(b), 419(c). Absentee mail-in voters lacking this ability to cure missing or insufficient information immaterial to Gwinnett's attempt to confirm the voters' identities are

KH510839.DOCX 3

7

thus denied the ability to participate in the Election relative to in-person voters and absentee mail-in voters who received notice in sufficient time to vote in-person.

Plaintiffs are substantially likely to succeed on their claims that county elections officials who reject absentee mail-in ballots for missing or insufficient oath information violate Federal and Georgia law.

**B. Plaintiffs are Substantially Likely to Succeed on Their Argument That Rejecting Provisional Ballots Cast in a County Other Than That in Which the Voter Resides, and Providing Only Three Days in Which the Voter and County May Cure Such Ballots, Are Unconstitutional under Georgia Law**

O.C.G.A. § 21-2-419(c) gives a voter and county elections officials only three days to cure the issues that caused the voter's ballot to be cast as provisional. Section 419(c) also establishes that voters who vote provisionally but are found "not eligible or entitled to vote in such … election," or elections officials are "unable to determine within three days following such … election whether such person … was eligible and entitled to vote in such … election," shall not be allowed to vote. Counties apply this statute to reject provisional ballots cast in one county by a voter registered to vote in another county. *See* O.C.G.A. § 21-2-218(f). A voter, however, with a good faith belief that she is registered in the county in

which she seeks to vote, may cast a provisional ballot.[5] *E.g.,* Tate Decl. ¶¶ 2-5.
This is so even though the Georgia Administrative Code directs poll officers to
allow a person appearing to vote in a precinct in which she does not reside, in the
absence of definitive information from the registrars concerning whether the
person is validly registered to vote in that precinct, to cast a provisional ballot and
for the person's votes to count for candidates for whom the person is properly
entitled to vote. Ga. Comp. R. & Regs. 183-1-12-.06(4)(e)-(h). And this is so even
where events have shown that the state voter registration system may have
significant vulnerabilities and, at minimum, suffers from the appearance of
compromise.[6] *See, e.g., Curling v. Kemp,* --- F.Supp.3d ----, 2018 WL 4625653
(N.D. Ga. Sept. 17, 2018) (finding plaintiffs substantially likely to succeed on the
merits of their claims concerning serious vulnerabilities in Georgia's voting

---

[5] "If a person presents himself or herself at a polling place, absentee polling place,
or registration office in his or her county of residence in this state for the purpose
of casting a ballot in a primary or election stating a good faith belief that he or she
has timely registered to vote in such county of residence in such primary or
election and the person's name does not appear on the list of registered electors, the
person shall be entitled to cast a provisional ballot in his or her county of residence
in this state as provided in this Code section." O.C.G.A. § 21-2-418(a).

[6] *See generally* Hasen, Richard L., <u>Brian Kemp Just Engaged in a Last-Minute Act
of Banana-Republic Level Voter Manipulation in Georgia</u>, SLATE Magazine
(Nov. 4, 2018), available at <u>https://slate.com/news-and-politics/2018/11/georgia-governor-candidate-brian-kemp-attempts-last-minute-banana-republic-style-voter-manipulation.html</u> .

system). Moreover, nothing about a ballot concerning statewide races, such as contests for governor, should vary in substance across counties; registered voters residing in all Georgia counties are entitled to vote for Georgia's constitutional officers.

Section 419(c), as applied to Plaintiffs under the circumstances of the 2018 election in Georgia, is unconstitutional. The three ways in which the application of Section 419(c) is unconstitutional as applied to this election are delineated in Counts IV, V, and VI of the Complaint:

- It will result in an undue burden on the right to vote in violation of the First and Fourteenth Amendments (Count IV);

- It will result in the denial of procedural due process rights in violation of the Fourteenth Amendment (Count V); and

- It will result in the arbitrary and disparate treatment of certain voters in violation of the Fourteenth Amendment (Count VI).

1. *Count IV: Enforcing O.C.G.A. § 21-2-419(c) this year will result in an undue burden on the right to vote in violation of the First and Fourteenth Amendments.*

Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a state classification is subject to strict scrutiny when it "burdens the exercise of a fundamental right guaranteed by the U.S. Constitution," including the "fundamental rights to free speech and to vote." *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210-11 (10th Cir. 2002).  Moreover, any state

KH510839.DOCX 3

election regulation that imposes non-discriminatory restrictions on the right to vote must be justified by an important regulatory interest. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "However slight th[e] burden may appear … it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., plurality opinion) (internal quotation marks omitted). This inquiry requires a court to "weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justification for the burdens imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).

Enforcing the requirement that county boards cannot cure provisional ballots after November 9 would impose significant burdens on the fundamental right to vote. In light of the historic numbers of provisional ballots cast in this election, and the burdens on each of Georgia's 159 counties due in part to confusion about what is required to cure a vote, significant numbers of voters are slated to be

disenfranchised because there simply has not been enough time to cure their provisional ballots.[7]

At the same time, there is no regulatory interest in enforcing the three-day cure period imposed by O.C.G.A. § 21-2-419 under the circumstances presented here. Although Defendants may assert a governmental interest in convenience, finality, or simplicity in closing the counting of provisional ballots by November 9, this interest in minimal.  As noted, in light of the temporary restraining order in the related *Martin* and *GMVP* cases, county boards will not be finalizing their vote tally until November 13 in any event. *See Martin v. Kemp*, 1:18-cv-4776-LMM (N.D. Ga.), Order [Dkt. No. 26]; *Georgia Muslim Voter Project v. Kemp*, 1:18-cv-4789-LMM (N.D. Ga.), Order [Dkt. No. 28].

There is no legitimate reason to prohibit the curing of provisional ballots that can be cured on November 13 while absentee ballots are still being cured at that time as well. Although, upon information and belief, the Secretary of State's office has informed the press of its intent to certify the state-wide results on November 14, 2018, it is under no obligation to do so until Monday, November 20. The result

---

[7] Plaintiffs are securing declarations to file in support of this Motion.  It is anticipated those declarations will show confusion about, dysfunction around, misinformation on, and lack of sufficient resources to cure provisional ballots.

KH510839.DOCX 3

is that providing the relief requested in this Motion will engender no delays in certifying the final results and will not require Defendants to develop any additional processes. Thus, the state has no interest of sufficient importance to outweigh the undue burden that application of O.C.G.A. § 21-2-419 would place on eligible voters.

### 2. *Count V: Enforcing O.C.G.A. § 21-2-419(c) this year will result in the denial of procedural Due Process rights in violation of the Fourteenth Amendment.*

Plaintiffs and their constituents possess a constitutionally protected right to vote, and § 21-2-419(c) has or will result in some ballots being rejected through no fault of the elector and without providing the elector an adequate process to remedy that rejection. This violates the Constitution's procedural due process protections.

A claim for procedural due process lies when there is "(1) a constitutionally protected liberty or property interest and (2) a governmental failure to provide an appropriate level of process." *Citizen Center*, 770 F.3d at 916.

Here, Plaintiffs have a right to vote and the government is failing to provide them with appropriate process to ensure that right given the large numbers of provisional ballots cast and the short time-frame provided by § 21-2-419(c)(1). For example, voters who travelled to the DeKalb County Board of Elections on the

KH510839.DOCX 3

morning of November 9, 2018 to cure their provisional ballots were told that their

names were being added to a list and that they will be contacted next week – after

the cure period has expired. Declaration of Rachel Knowles, ¶¶ 7-9; Declaration of

Terakesha Graves, ¶¶ 4-9. Even when a voter timely presents herself to secure a

flaw, as in this Election, it appears DeKalb County, at least, is overwhelmed by the

volume of provisional voters or does not understand how the many types of

provisional ballots are cured.

Lona Tate provides a good example. Ms. Tate voted provisionally in DeKalb

County. Declaration of Lona Tate. She was told when voting that she was

considered an out-of-county voter. Tate Decl. ¶ 5. Ms. Tate moved from Cobb

County to DeKalb County in early October 2018 and changed her address online

on October 9, 2018 before 5:00 pm. Tate Decl. ¶ 2-3. She thus should have been

allowed to vote in DeKalb County casting a regular (DRE unit) ballot.

Ms. Tate thus appeared at her assigned DeKalb precinct on November 6

after a bus ride and a brisk walk. Tate Decl. ¶ 4. After waiting in line for some time

and speaking to several poll workers, she was told that her voter file showed her

former Cobb County address. Tate Decl. ¶ 5. She was required by poll workers to

cast a provisional ballot. Tate Decl. ¶ 5-6. She was not provided a notice of her

right to cure her provisional ballot, or a proof of casting a provisional ballot, as

KH510839.DOCX 3

required by the Help America Vote Act of 2002. Tate Decl. ¶ 6; 52 U.S.C. §

21082(a)(5) (requiring voters be provided written information regarding a free

access system to determine whether their vote was counted at the time they cast

their provisional ballot); O.C.G.A. § 21-2-418(f) (same).

Ms. Tate called plaintiff DPG's Voter Protection Hotline for assistance, and

was advised that she could submit curative documents at the DeKalb County Board

of Elections. Tate Decl. ¶ 7. Ms. Tate again boarded public transit with proof of her

new address for voter registration purposes, to show that she was a registered voter

in DeKalb County and thus to ensure that her provisional ballot would be fully

accepted. Tate Decl. ¶ 8. At approximately 12:06pm on November 9, 2018, after

some difficulty, she arrived at the DeKalb County Board of Elections and asked to

present information to cure her ballot. Tate Decl. ¶ 8. The DeKalb employee

declined to accept Ms. Tate's information. Tate Decl. ¶ 9.  The employee noted

that DeKalb had not called Ms. Tate to provide this information, causing Ms. Tate

some anxiety. Tate Decl. ¶ 9-10. Despite her concerns, the receptionist told Ms.

Tate everything was "good to go." Tate Decl. ¶ 10-11.

Under O.C.G.A. §§ 21-2-218 and 419, however, Ms. Tate's vote will not

count. DeKalb showed no understanding of how Ms. Tate could prove that she was

lawfully registered in DeKalb County. If DeKalb County's records are incorrect –

KH510839.DOCX 3

as Ms. Tate contends – her provisional ballot was cast in-county, and her votes for offices for which she is eligible to cast a ballot, such as the office of Governor of Georgia, should be counted. Because the County did not appear to understand that provisional ballots cast by a voter in her county of residence, even where the master voter list does not show the voter as registered in that county, are even *capable* of cure, Ms. Tate has been denied any advance notice that she could not vote in DeKalb County, and any opportunity to cure her vote. This is not the way due process of law works, constitutionally. These statues should be enjoined.

### 3. Count VI: Enforcing O.C.G.A. § 21-2-419(c) this year will result in the arbitrary and disparate treatment of certain voters in violation of the Fourteenth Amendment.

Georgia citizens in DeKalb County have "a constitutionally protected right to participate in elections on an equal basis with other citizens in [Georgia]." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). "[S]tate actions in election processes must not result in 'arbitrary and disparate treatment'" of DeKalb County voters, putting them at a disadvantage compared to other counties. *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 234 (6th Cir. 2011) (quoting *Bush v. Gore*, 531 U.S. 98, 105 (2000)).

Enforcing the three-day cure period in this election will result in arbitrary and disparate treatment of provisional voters depending simply on the resources of

KH510839.DOCX 3

county boards to cure ballots within this narrow timeframe. The Secretary of State's representation in a recent filing in this Court could be an indication that some counties are having more difficulty with the certification process than others. *See Common Cause Georgia v. Kemp*, No. 1:18-cv-05102-AT, Defendant's General Submission in Response to Court's Request for Information (Doc. 40) (N.D. Ga. Nov. 9, 2018). This arbitrary and disparate treatment of the right to vote is inconsistent with the Fourteenth Amendment.

## C. Absent Relief, Plaintiffs Will Suffer Irreparable Harm.

The harm to Plaintiff if the injunction is not granted is by its very nature irreparable. Voting is a "fundamental political right, because preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). The test for granting equitable relief is not whether injury is certain to occur, but whether it is "likely" to occur. *Winter*, 555 U.S. at 20. Second, the likely miscounting of any votes infringes upon Plaintiff's right to a fair and impartial election. *Anderson v. United States*, 417 U.S. 211, 226 (1974) (Marshall, J.) ("The deposit of forged ballots in the ballot boxes, no matter how small or great their number, dilutes the influence of honest votes in an election, and whether in greater or less degree is immaterial."). Third, the widespread acceptance of the legitimacy and accuracy of an election is itself a value that is certain to be irreparably harmed if Defendants

KH510839.DOCX 3

continue the arbitrary rejection of absentee ballots.  *Casarez v. Valverde Cty.*,957 F. Supp. 847, 865 (W.D. Tex. 1997).

"An injury is irreparable if it cannot be undone through monetary remedies." *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (internal quotation marks omitted). Here, there would be no remedy—monetary or otherwise—that would cure the harm suffered by absentee mail-in and provisional ballot voters if they are prevented from having their ballots rejected for immaterial reasons, or reasons that deprive them of due process or equal protection of the laws. That harm would be irreversible in the absence of the requested injunctive relief because Georgia law provides no opportunity for the re-adjudication of election results once they are certified. *See Martin v. Kemp*, No. 1:18-CV-4776-LMM, 2018 WL 5276242, at *2 (N.D. Ga. Oct. 24, 2018), *appeal filed*, No. 18-14503 (11th Cir. Oct. 29, 2018); *see also Hoblock v. Albany Cty. Bd. Of Elections*, 422 F.3d 77, 97 (2d Cir. 2005) (recognizing that certification of election results without counting certain absentee ballots would constitute irreparable harm).

The likelihood of irreparable harm is greater where, as here, the claims implicate voting, a "fundamental political right . . . [that is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). "It is simply not possible to pay someone for having been denied a right of this importance," and therefore,

monetary remedies "would obviously be inadequate." *Dillard v. Crenshaw Cty.*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986). "Irreparable injury is presumed when '[a] restriction on the fundamental right to vote' is at issue." *Madera v. Detzner*, 325 F. Supp. 3d 1269, 1282 (N.D. Fla. 2018) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

As a result, courts routinely recognize that state actions that infringe upon the right to vote constitute irreparable injury for preliminary injunction purposes. *See, e.g.*, *Ga. State Conference of the NAACP v. Fayette Cty. Bd. of Comm'rs*, 118 F. Supp. 3d 1338, 1347–48 (N.D. Ga. 2015) (Batten, J.) (finding irreparable harm where plaintiffs would be forced to vote using an election system that would dilute their votes); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 324 F. Supp. 2d 1358, 1368 (N.D. Ga. 2004) (same where defendant refused to accept plaintiff's voter registration in her precinct of residence, preventing her from voting), *aff'd*, 408 F.3d 1349 (11th Cir. 2005); *Dillard v. City of Greensboro*, 870 F. Supp. 1031, 1035 (M.D. Ala. 1994) (denying stay pending appeal of an injunction, noting that in a constitutionally defective election, "monetary remedies would be inadequate compensation for the plaintiffs").

Plaintiffs' requested remedies for provisional ballot injuries address this irreparable harm. Delaying the provisional cure and, accordingly, the certification

KH510839.DOCX 3

dates for Georgia counties, and requiring corrected returns to be certified, prevents the irreparable and severe deprivation of the fundamental right to vote without due process and in an arbitrary manner. Counting provisional ballots cast by voters timely and validly registered in another county, meanwhile, also arbitrarily deprives voters of their right to vote for constitutional officers and, in some cases, Federal Congressional candidates or state legislative candidates, based on the presumed validity of the state voter registration system.

### D. Plaintiffs' Threatened Injury Outweighs The Harm The Proposed Relief May Inflict On Defendants.

The threatened injury to Plaintiffs is the loss of their members' and supporters' votes in a statewide election of great importance and historic attempted turnout. In the absence of the requested relief, the likely injury to the interests of Georgia's voters is significant and irreparable, as explained above. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). As a candidate for the Georgia General Assembly who won an election contest recently said, "It's important that voters' votes are

KH510839.DOCX 3

counted correctly. We should all hold this as a very important part of our country. This is who we are as a democracy."[8]

To avoid this harm of voters' votes not being counted correctly, Plaintiffs have already expended and will continue to expend, considerable resources and paid and volunteer staff time it would otherwise devote to other organizational activities, including educating, informing, encouraging, and assisting voters for runoff elections scheduled for December 4, 2018. Declaration of Lauren Groh-Wargo; Declaration of Rebecca DeHart; Declaration of Quinn Mulholland.

The requested relief requires the Defendants to do what Georgia law requires it to do – not reject ballots simply because they are missing birthdate information. The additional procedures for verification or rejection of signatures serves the State's interest in ensuring that no absentee mail ballot is erroneously rejected. And, since requiring the birth year serves no purpose if the voter has been identified through verification of signature, eliminating mistakes relating thereto as a ground for rejection causes the State no harm. Further, fundamental voting rights

---

[8] Niesse, Mark, Redo of Georgia House election ordered after voters cast wrong ballots, The Atlanta-Journal Constitution (Sept. 19, 2018), available at https://www.ajc.com/news/state--regional-govt--politics/redo-georgia-house-election-ordered-after-voters-cast-wrong-ballots/P3r7UmYVpsOAZMQoBin9vI/.

KH510839.DOCX 3

outweigh the administrative cost associated with fixing election systems or procedures.

More importantly, though, are the harms to the voters.  An absentee or provisional vote rejected by the cure deadline is gone. There is no recycle bin; it cannot be restored. The injury of disenfranchisement outweighs the harm to Defendants and to the Defendant Class of the brief delay in the proposed deadline to cure. Moreover, counting out-of-county ballots prevents disenfranchisement of voters who, through no fault of their own, found themselves standing before polls after hours of traveling and waiting, only to be told unbeknownst to them that their efforts to register properly had gone for naught. Tate Decl. ¶¶ 2-11.

Plaintiffs do not seek extraordinary relief; rather, they seek additional time and fairly applied rules to ensure that every valid vote is counted.  Although the requested injunctive relief may "require additional efforts" at an administrative level, extending the three-day deadline to cure provisional ballots would not be "impossible or unduly burdensome." *See Fayette County*, 118 F. Supp. 3d at 1348. Nor would accepting and counting ballots previously rejected specifically due to a voter casting the ballot out-of-county – which Plaintiffs understand is commonly coded as "PR" by elections superintendents and registrars – would impose little burden on Defendants and the Defendant Class, particularly if the deadline to

KH510839.DOCX 3

certify election results were extended. Whatever costs, burdens, and

inconveniences may fall on Secretary Crittenden, those burdens "cannot begin to

compare with the further subjection of [Georgia's voters'] to denial of their right,

to full and equal political participation." *Crenshaw County*, 640 F. Supp. at 1363.[9]

### E. Entry Of Relief Would Favor The Public Interest.

"[T]he protection of 'franchise-related rights is without question in the

public interest.'" *Fayette County*, 118 F. Supp. 3d at 1349 (quoting *Cox*, 408 F.3d

1355). Plaintiffs' requested injunction would protect the franchise-related rights of

eligible Georgia voters who cast absentee mail-in ballots and provisional ballots in

the dysfunctional 2018 Georgia election. The requested injunctive relief would

serve the public interest because it would bolster public confidence in the election

process. *See Casarez v. Val Verde County*, 957 F. Supp. 847, 865 (W.D. Tex.

---

[9] *See also United States v. Berks County*, 250 F. Supp. 2d 525, 541 (E.D. Pa. 2003)
("Although these reforms may result in some administrative expenses for
Defendants, such expenses are likely to be minimal and are far outweighed by the
fundamental right at issue."); *Johnson v. Halifax Cty.*, 594 F. Supp. 161, 171
(E.D.N.C. 1984) (granting preliminary injunction upon finding that administrative
and financial burdens on defendant were not undue in light of the irreparable harm
caused by unequal opportunity to participate in county election); *North Carolina
State Conference of the NAACP v. N.C. State Bd. of Elections*, No. 1:16-cv-1274,
2016 WL 6581284, at *10 (M.D.N.C. Nov. 4, 2016) ("Any additional burden that
may result from restoring voter registrations that were improperly canceled should
fall on the State, not on the voter.").

KH510839.DOCX 3

1997) ("The public must have confidence that the election process is fair. Those who have studied history and have observed the fragility of democratic institutions in our own time realize that one of our country's most precious possessions is the widespread acceptance of election results." (ellipses omitted)).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court hold a hearing on this matter as soon as possible and then issue an Order:

1. That the Court immediately issue an order enjoining Defendants and all members of the Defendant Class from certifying county or statewide election returns for the November 6, 2018 General Election until Wednesday, November 14, 2018 at 9:00 pm;

2. That the Court issue an order and judgment declaring federal and Georgia law to require county registrars to accept absentee mail-in ballots cast in the November 6, 2018 General Election on which the voter provided missing or insufficient oath information, where that missing or insufficient information does not substantially obstruct the county registrar from verifying the identity of the absentee voter;

3. That the Court issue an order and judgment that counties accept evidence curing provisional ballots cast in the November 6, 2018 General Election, and that counties count ballots so cast and cured as set forth in O.C.G.A. § 21-2-419, through Wednesday, November 14, 2018 at 5:00 p.m.;

4. That the Court issue an order and judgment that Defendants DeKalb County and Gwinnett County, and all similarly situated counties, treat provisional ballots cast in the November 6, 2018 General Election by a voter registered in another county as if they had cast ballots within the wrong precinct of the same county as described by O.C.G.A. § 21-2- 419(c)(2);

5. That the Court issue an order and judgment that, as to the Defendant Class that has already certified election results, directing the Class to restore the votes of

KH510839.DOCX 3

qualified electors as specified by this Court, and to certify and file corrected returns with Defendant Crittenden; and

6. That the Court issue an order and judgment enjoining Defendant Crittenden from refusing to accept any corrected election returns certified and filed by a county elections superintendent in response to an order of this Court.

Dated:       November 12, 2018               Respectfully submitted,

**KREVOLIN & HORST, LLC**

*/s/ Halsey G. Knapp, Jr.*
Halsey G. Knapp, Jr.
Georgia Bar No. 425320

One Atlantic Center, Suite 3250
1201 W. Peachtree Street., N.W.
Atlanta, Ga 30309
(404) 888-9700
(404) 888-9577
hknapp@khlawfirm.com

**The Summerville Firm**

Kurt G. Kastorf
Georgia Bar No. 315315

1226 Ponce de Leon Ave NE
Atlanta, GA 30306
(770) 635-0030
kurt@summervillefirm.com

**Sandler Reiff Lamb Rosenstein & Birkenstock P.C.**

Dara Lindenbaum
(*Pro hac vice* to be sought)

1090 Vermont Avenue NW
Suite 750
Washington, D.C. 20005
(202)734-6139
Lindenbaum@sandlerreiff.com

*Attorneys for AFG Group Inc d/b/a*
*Stacey Abrams for Governor and the*
*Democratic Party of Georgia, Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1(D), I hereby certify that the foregoing document has

been prepared in accordance with the font type and margin requirements of LR 5.1,

using font type of Times New Roman and a point size of 14.

This 12th day of November 2018.

> */s/ Halsey G. Knapp, Jr.*
> Halsey G. Knapp, Jr.
> Georgia Bar No. 425320
> *Attorneys for AFG Group Inc d/b/a*
> *Stacey Abrams for Governor and the*
> *Democratic Party of Georgia, Inc.*

One Atlantic Center, Suite 3250
1201 W. Peachtree Street., N.W.
Atlanta, Ga 30309
(404) 888-9700
(404) 888-9577
hknapp@khlawfirm.com

KH510839.DOCX 3

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2018, a true and correct copy of the foregoing was filed electronically and served upon all parties accepting service via the Court's electronic transmission facilitates, as well as by electronic mail to known counsel for each Defendant, per verbal instructions provided by the Court to counsel of record.

This 12th day of November 2018.

KREVOLIN & HORST, LLC

*/s/ Halsey G. Knapp, Jr.*
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
*Attorneys for AFG Group Inc d/b/a*
*Stacey Abrams for Governor and the*
*Democratic Party of Georgia, Inc.*

One Atlantic Center, Suite 3250
1201 W. Peachtree Street., N.W.
Atlanta, Ga 30309
(404) 888-9700
(404) 888-9577
hknapp@khlawfirm.com

KH510839.DOCX 3

28