## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THE DEMOCRATIC PARTY OF
GEORGIA, INC., *et al.*,

     Plaintiffs,

vs.

ROBYN A. CRITTENDEN, in her
official capacity as the Secretary of
State of Georgia; *et al.*,

     Defendants.

Civil Action No.: 1:18-cv-5181-SCJ

## DEFENDANTS STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD, AND BEAUTY BALDWIN'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Fewer than 24 hours before Gwinnett County's planned certification of its election returns to the Secretary of State, Plaintiffs filed a motion for preliminary injunction,[1] seeking to rewrite the statutory processes for handling provisional ballots in Georgia and impose massive new burdens on elections officials across the state. Plaintiffs have not alleged that anything changed in Georgia's election processes in the 2018 election. They have apparently come to the conclusion that

---

[1] Counsel for Defendants Stephen Day, John Mangano, Alice O'Lenick, Ben Satterfield, and Beauty Baldwin (collectively the Gwinnett BORE) received emailed copies of Plaintiffs' motion at 4:37pm on Monday, November 12, 2018.

Georgia's existing provisional and absentee ballot[2] processes offend the U.S. Constitution in a way that requires emergency relief.

Plaintiffs have not exercised reasonable diligence in bringing these matters before the Court and their motion should be denied for that reason alone. *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1944 (2018). But the proposed injunction would also bring chaos to the election process and burden voters who seek to vote in the December 4 runoff elections. Plaintiffs' proposed relief regarding out-of-county provisional ballots is completely unworkable for local election officials. The ongoing certification process makes Plaintiffs' claims moot, because their proposed relief would require every county in the state to repeat a process that began a week ago. And Plaintiffs lack standing to bring this action.

If Plaintiffs dislike the results of the November 6 election, they have a remedy available to them: the state election contest procedures. This is not a matter that should be heard in federal court and especially not when final certification for all counties must take place later today.

_____

[2] According to conversations between Judge Timothy Batten, who is serving as the duty judge this week, and counsel yesterday, the absentee ballot claims were to be severed and placed before Judge May. The remaining provisional ballot allegations remain before this Court.

## FACTUAL BACKGROUND

Understanding of several parts of Georgia's longstanding election processes may assist the Court in separating fact from fiction.

Georgia voters can vote a provisional ballot if they go to the wrong precinct in their home county and do not have enough time to get to their assigned precinct before the polls close. O.C.G.A. § 21-2-418(a); Ga. Comp. R. & Regs. 183-1-12-.06(4)(d). If a voter casts an out-of-precinct provisional ballot, the only votes that are counted are the races "for which the person was entitled to vote." O.C.G.A. § 21-2-419(c)(2). In order to make this substitution, election officials must create a duplicate ballot with only the eligible races filled in. Ledford Dec. at ¶ 18.

When paper ballots, whether absentee or provisional, are not filled out fully in a way readable by the optical-scan machines or were voted out-of-precinct and are thus are limited to a smaller group of elections, elections staff create duplicate ballots under the process outlined in O.C.G.A. § 21-2-483(f) to make ballots that are readable for the machine scanners. Ledford Dec. at ¶¶ 11-12. This process is time-consuming because it must be done by hand with witnesses. *Id.*

Election officials in each county are able to determine if someone who voted out of their home precinct was otherwise eligible to vote because they have all of the information about the voters in that *particular county* who voted during the

tabulation process. Ledford Dec. at ¶ 16. Election officials do not have access to

*statewide* credit for voting information available to them during tabulation, so

someone could vote in more than one county and not be caught until well after the

election if out-of-county provisional ballots were counted. Ledford Dec. at ¶ 17.

Georgia law requires that counties certify their results to the Secretary of

State by today at 5:00pm. O.C.G.A. § 21-2-493(k). The Secretary of State then has

up to a week to certify, but generally does so as quickly as possible because ballots

for the December 4 runoff elections cannot be printed until after the results are

certified.[3] Ledford Dec. at ¶¶ 20-21.

## ARGUMENT AND CITATION OF AUTHORITY

### I. Standards governing preliminary injunctions in the election context.

This Court is well-aware of the extraordinary nature of what Plaintiffs seek.

*McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Plaintiffs

must demonstrate: (1) they have a substantial likelihood of success on the merits of

their claims; (2) they will likely suffer irreparable harm in the absence of an

injunction; (3) that the balance of equities tips in Plaintiffs' favor; and (4) that an

---

[3] By order last night, Judge Totenberg has enjoined the Secretary of State from certifying statewide totals until 5:00 pm on Friday, November 16, 2018. *Common Cause v. Kemp*, Case No. 1:19-cv-05102-AT, (Doc 62) slip op. at 52 (November 12, 2018).

injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008).

In the context of elections, the extraordinary nature of injunctive relief is heightened, because of the public interest in orderly elections and the integrity of the election process. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5, 127 S.Ct. 5 (2006). Especially in the context of elections, parties must show they exercised reasonable diligence to obtain a preliminary injunction. *Benisek*, 138 S.Ct. at 1944. Even if plaintiffs are able to show a likelihood of success on the merits, injunctions are often refused in the election context because of the unique equitable considerations of the state's election machinery. *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *Benisek*, 1943–44 (2018).

As discussed below, Plaintiffs are not entitled to the relief they seek. First, this Court should deny a preliminary injunction in this case because the equities do not favor Plaintiffs and it is not in the public interest. While Gwinnett County does not take a position on the constitutionality of the challenged statutes, Plaintiffs have also not shown they are likely to succeed on the merits.

Second, even if Plaintiffs could have shown they met the standard for a preliminary injunction, their claims are moot because more than 100 Georgia counties have already certified. *See* Results by County, available at

https://results.enr.clarityelections.com/GA/91639/Web02-state.220747/#/access-to-races (showing which counties have certified election returns).

Third, Plaintiffs' motion should not include any grant of an injunction against a class. There has been no motion to certify a defendant class and Gwinnett County is not a proper class representative because it does not know the interests or processes of the 158 other counties. Gwinnett taxpayers should not be saddled with the sole responsibility of defending against Plaintiffs' last-minute efforts. Indeed, Plaintiffs' complaint even alleges that Gwinnett takes a different approach to absentee ballot processing than other counties. [Doc. 1, pp. 20-22].

Finally, although this is a very early stage of this litigation, Plaintiffs have not sufficiently alleged that they have standing to bring these claims. No individual voters are in this case and individual determinations are necessary. Plaintiffs have also not shown a sufficient injury that is traceable to the challenged statutes and redressable by this Court.

There is no need for this Court to be involved in an ongoing state election. Plaintiffs waited until they knew the outcome of the election and now seek to change the rules governing absentee and provisional ballots in the state of Georgia during the completion of the tabulation process. To the extent Plaintiffs believe

that county election superintendents have rejected ballots inappropriately, they have a clear statutory remedy: an election contest. *See* O.C.G.A. § 21-2-522.

"Subject to specific exceptions, federal courts should not be involved in settling state election disputes. Sound reasons grounded in both law and public policy establish that far better forums for disputes involving elections to state offices are found in the party machinery and the court system of the affected state." *Curry v. Baker*, 802 F.2d 1302, 1304–05 (11th Cir. 1986); *Roe v. State of Ala. By & Through Evans*, 43 F.3d 574, 582 (11th Cir. 1995) ("federal courts should refrain from holding a state election law unconstitutional when a reasonable alternative course of action exists"). The election results should be certified and Plaintiffs can bring their claims through the normal election contest procedures instead of causing massive disruption to the December 4 runoff elections.

## II. Plaintiffs' motion should be denied because Plaintiffs are not likely to prevail on the merits, the equities do not favor Plaintiffs, and it is not in the public interest.

The 2018 general election has been ongoing since September 21, 2018, when Gwinnett County mailed its first absentee-by-mail ballot. Ledford Dec. at ¶ 6. Barring further action from this Court, Gwinnett will certify its vote totals to the Secretary of State later today. O.C.G.A. § 21-2-493(k); Ledford Dec. at ¶¶ 20-21.

Gwinnett County also provided thousands of hours of in-person voting opportunities for voters at eight early voting sites, far more than the statutory minimum. Gwinnett County wants to ensure that every eligible voter can cast a ballot and does this consistent with the state's interest in ensuring an orderly and fair election. *Purcell*, 549 U.S. at 4-5.

> *A. While the Gwinnett BORE does not take a position on the constitutionality of the challenged statutes, Plaintiffs have not shown they are likely to succeed on the merits for purposes of this motion.*

Throughout litigation related to the absentee balloting process, the Gwinnett BORE has not taken a position on the constitutionality of the challenged statutes and does not change that position here. But the Gwinnett BORE can offer some insight for the Court regarding the county interests involved and why Plaintiffs have not shown they are likely to succeed for purposes of this motion.

### 1. Plaintiffs' first claim is not specific about which constitutional provision it violates.

To the extent there are any pending absentee ballot claims before the Court in this motion in light of the severance of the claims, Plaintiffs first argue they will succeed on the merits of the unconstitutionality of Gwinnett's procedures in the processing of absentee ballots. Motion for Preliminary Injunction (Plaintiffs' Motion), p. 5-8. But Plaintiffs do not explain what constitutional provision they believe Gwinnett's procedure violates and appear to be bringing both facial and as-

applied challenges, because the first part of the section involves Gwinnett's *application* of O.C.G.A. § 21-2-386(a)(1)(C), Plaintiffs' Motion, pp. 5-6, while the second part of the section claims that the statute does not provide a sufficient cure period, which appears to be a *facial* challenge to the statute.[4] Plaintiffs' Motion, pp. 7-8.

Even under Plaintiffs' proposed interpretation of *Jones v. Jessup*, 279 Ga. 531, 533 n.5 (2005), there are situations where election officials can properly reject absentee ballots for missing birth-year or other information when that information is required to identify a voter. *See* Ex. 2 to Complaint, p. 4. Thus, even if this Court could identify what constitutional provision Plaintiffs claim is being violated, it would require each individual ballot to be evaluated to determine whether the birth year or other identifying information outlined in the statute was required to identify a voter.

Plaintiffs are not likely to succeed on their first claim because they have not identified what it actually is and because it will require a ballot-by-ballot determination with no evidence before the Court at this point.

---

[4] A plaintiff can only succeed in a facial attack on a statute by demonstrating that there is no way to constitutionally implement the statute. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190 (2008); *J.R. v. Hansen*, 736 F.3d 959, 965 (11th Cir. 2013). Facial challenges are disfavored for this reason, because they risk interpreting a statute without all the facts. *Sabri v. United States*, 541 U.S. 600, 609, 124 S.Ct. 1941 (2004).

<u>2. Plaintiffs' claims regarding provisional ballots fail to consider important state interests.</u>

Plaintiffs' next claim regarding provisional ballots is clearer from a legal perspective, citing three constitutional provisions that Plaintiffs claim conflict with O.C.G.A. § 21-2-419 as applied by county officials.[5] While Plaintiffs have the same problem with the lack of proper defendants to determine the application of these laws, they have left out a significant interest of the state: the avoidance of fraud in balloting.

As the Eleventh Circuit recognizes, states have a significant interest in avoiding fraud in elections. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1353-55 (11th Cir. 2009). Any burden on the fundamental right to vote considered under the *Anderson/Burdick* sliding scale, requires a consideration of this significant state interest. *Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983). As outlined by Director Ledford, Georgia officials do not have the ability to check whether an individual voted in another county during the tabulation process. Ledford Dec. ¶¶ at 16-17. Without this important information, an individual could vote multiple provisional ballots in different counties and never be discovered until the credit for voting information

---

[5] While categorized as "as applied," this also appears to be in part a facial attack on the three-day cure period as written.

was uploaded after the conclusion of the election. This is a significant state interest left completely unaddressed by Plaintiffs' analysis.

County officials also need an end to the cure period so they can focus on tabulating the votes that were cast. When a provisional ballot is accepted, it often has to be duplicated in order to be made readable by the optical-scan machines. Ledford Dec. at ¶¶ 11-12, 18. The timelines provided by statute are barely long enough for a large county like Gwinnett to complete all of the tasks given it by the certification deadline. Ledford Dec. at ¶¶ 13-14. Adding an additional cure period will add to the burden of election officials already working hard on the tabulation process.[6] This is not arbitrary treatment of voters, but rather a recognition by the statute of the practical realities of tabulation, especially with the short four-week period until the state runoff.[7]

Georgia's process for allowing out-of-precinct voting for provisional ballots is more expansive than what is allowed under the Help America Vote Act in other

---

[6] The short cure period added by Judge May's order in *Ga. Muslim Voter Project v. Kemp*, Case No.: 1:18-cv-04789-LMM and *Martin v. Kemp*, 1:18-cv-04776 LMM was limited to an extremely small universe of absentee provisional voters and thus did not have the same impact as a cure period open to all provisional ballot voters.

[7] Plaintiffs also apparently fail to recognize that Georgia expanded its provisional balloting cure period in 2010 from two days to three days. *See* 2010 GA. LAWS Act 632. A two-day cure period was part of the Florida voting scheme reviewed by the Eleventh Circuit in *Browning*. 522 F.3d at 1177.

states. For example, Ohio's more-restrictive provisional balloting statutes did not allow out-of-county voting and was upheld by the Sixth Circuit. *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 578 (6th Cir. 2004).

Plaintiffs have not shown they are likely to succeed on the merits of their claims. While this is certainly an extremely short timeline, Plaintiffs must show something about existing Georgia law that is unconstitutional facially or as-applied in order to show any entitlement to relief, especially relief as sweeping as what they have proposed.

> *B. The equities do not favor Plaintiffs because of the massive hardships that would be imposed on election officials if the relief is granted and the availability of a state remedy for any wrongly rejected ballots.*

A court weighing the equities of a proposed injunction must "balance the competing claims of injury" and consider the "public consequences" of an injunction. *Winter*, 555 U.S. at 24. A court should consider the harm the applicant is likely to suffer with the harm the opponent will suffer if an injunction is imposed. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010).

> 1. There are massive public consequences to entering a "preliminary" injunction after the election is over.

While Plaintiffs appear to be believe there is little administrative burden on the Gwinnett BORE from the relief they seek, they are sorely mistaken. Plaintiffs' Motion, p. 22 ("Plaintiffs do not seek extraordinary relief").

- 12 -

The reality is that Gwinnett BORE staff has spent the days following the election on the difficult and time-consuming work of duplicating absentee and verified provisional ballots so they can be tabulated. Ledford Dec. at ¶¶ 10-12. Adding a whole new group of ballots at this point in the proceeding is a huge burden. Ledford Dec. at ¶ 19. Given the short remaining timeline until the statutory deadline, the only way to count the previously rejected absentee ballots would be to delay certification. *Id*.

Any delay in certification will have statewide implications. If Gwinnett County (or any other county) cannot certify its results, then the statewide certification process is also delayed. With only four weeks until the December 4 runoff and the requirement of statewide certification before ballots can be printed for that election, Plaintiffs' remedy of delaying certification would have an extremely disruptive impact on the election processes. Ledford Dec. at ¶¶ 20-21. Likewise, the proposed cure period will further delay preparations for the December 4 runoff. *Id*. Each day certification is delayed is another day that voters who wish to cast absentee ballots in the runoff election will be unable to do so. *Id*.

> 2. Plaintiffs have a state remedy available to them that does not result in the chaos of delaying certification.

Plaintiffs have a state remedy available to them if the absentee or provisional ballots they claim were improperly rejected would have changed the result of an

election: the election contest procedures. One of the grounds for an election contest is that the number of "legal votes rejected" was "sufficient to change or place in doubt the result." O.C.G.A. § 21-2-522(3). If an election could have been decided by absentee or provisional ballots that Plaintiffs believe were improperly rejected by county officials, the losing candidate or an aggrieved elector can contest the election and address any issues involving those absentee ballots in a state court proceeding post-certification. O.C.G.A. § 21-2-521. There is no reason for this Court to enter an injunction when Georgia law already provides a sufficient remedy for the issues raised by Plaintiffs as to the 2018 election.

Federal courts should generally abstain from settling state election disputes and instead leave those disputes to state election processes. *Curry v. Baker*, 802 F.2d 1302, 1304–05 (11th Cir. 1986). This Court should deny Plaintiffs' attempt to subvert the normal state election contest procedures.

### 3. No emergency relief is needed to preserve the ability for this Court to review the constitutional claims raised by Plaintiffs.

Finally, the equities do not favor Plaintiffs because all of the issues raised in their respective complaints can be reviewed after the election. All ballots and other records must be retained by county election officials. O.C.G.A. § 21-2-500. And their claims do not even require the ballots, because they involve the

constitutionality of state law. This Court will be able to review the constitutional claims in this litigation without emergency relief.

> *C. The proposed injunction is not in the public interest because no party exercised any reasonable diligence placing these issues before the Court.*

The Supreme Court is clear that courts should deny injunctions that work a "chaotic and disruptive effect upon the electoral process," because they are not in the public interest. *See Fishman v. Schaffer*, 429 U.S. 1325, 1330, 97 S. Ct. 14 (1976); *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1945, 201 L. Ed. 2d 398 (2018). There is a significant public interest in ensuring orderly elections and the purpose of a preliminary injunction is to preserve the status quo—not to rewrite a statutory process after an election has occurred to attempt to change the outcome in court. *Benisek*, 138 S.Ct. at 1945; *Purcell*, 549 U.S. at 4-5. This is also why courts require movants to exercise reasonable diligence to place claims in front of the Court. *Benisek*, 138 S. Ct. at 1943-44.

Plaintiffs in this case did not exercise reasonable diligence to present their claims before the Court. If these statutes are unconstitutional today, as Plaintiffs argue, they were also unconstitutional weeks and months ago when Plaintiffs could have filed and had these issues considered in a more orderly way. Other plaintiffs raised issues with absentee balloting procedures in mid-October in *Martin* and *Ga.*

*Muslim Voter Project* and even the *Common Cause* case had its motion for temporary restraining order filed on the Wednesday night after the election.

While those cases were filed late in the election process, Plaintiffs waited even longer, filing their complaint on Sunday night and not filing the present motion for preliminary injunction until late in the day yesterday before a hearing today. Plaintiffs have not exercised reasonable diligence to bring these claims before the Court. *Benisek*, 138 S.Ct. at 1943-44. Instead, they sat and waited for the election results. Once they knew what those results were (and apparently did not like what they saw), they sought emergency relief in this Court.

The proposed injunctive relief is not in the public interest because of Plaintiffs' delays in placing these issues before the Court in a timely manner. The issues they raise should be handled in an election contest—not in federal court.

## III. Plaintiffs' motion should be denied because it has been mooted by the ongoing certification process.

The relief sought by Plaintiff in its motion for preliminary injunction begins with the enjoining county certification until tomorrow at 9:00pm. Plaintiffs' Motion, p. 3. From there, county election superintendents would have to re-process absentee and provisional ballots, including out-of-county ballots where it is impossible to verify whether the person voted in another county, and then to require re-certification by any county that already certified. *Id*.

The deadline for registrars to make determinations about provisional ballots was the close of business on Friday, November 9. O.C.G.A. § 21-2-419(c)(3). That deadline has already passed. The information from the Secretary of State indicates that the certification process for counties is now far more than halfway complete— and it will be completed in just a few hours. In other words, the process that Plaintiffs sought to enjoin is complete as to the consideration of provisional ballots and more than halfway complete as to certification.

As a result, any action taken by this Court cannot grant the full relief Plaintiff seeks and is inappropriate on a motion for preliminary injunction. Any order can only apply to counties that have not already certified their election results. "This Court cannot prevent what has already occurred." *De La Fuente v. Kemp*, 679 F. App'x 932, 933 (11th Cir. 2017); *Yates v. GMAC Mortg. LLC*, No. 1:10-CV-02546-RWS, 2010 WL 5316550, at *2 (N.D. Ga. Dec. 17, 2010) ("The Court is powerless to enjoin what has already occurred"). While Plaintiffs seek to require the re-counting and re-certification from counties that have already certified, it is completely unclear how they plan for this Court to exercise jurisdiction over officials who have already completed their statutory obligations regarding the 2018 general election.

A request for emergency relief becomes moot when the event sought to be enjoined has already occurred. For example, when a foreclosure sale happens before an injunction is granted, a motion for emergency relief to stop the sale is moot. *See, e.g., Johnson v. Bank of New York Mellon, N.A.*, No. 1:11-CV-03365-SCJ, 2012 WL 13012803, at *2 (N.D. Ga. Jan. 9, 2012); *Harrod v. Bank of Am., N.A.*, No. 1:12-CV-04261-SCJ, 2012 WL 12876111, at *1 (N.D. Ga. Dec. 13, 2012); *Ross v. PNC Bank, N.A.*, No. 1:14-CV-0872-SCJ, 2014 WL 12577113, at *1 (N.D. Ga. Apr. 3, 2014). A motion for emergency relief also becomes moot when a subsequent event occurs that prevents the challenged activity from recurring. *Smith v. Leach*, 294 F. Supp. 862, 866 (N.D. Ga. 1968) (request for injunction regarding Selective Service Act mooted by subsequent event that prevented plaintiff from reenlisting in the military); *see also Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993) (appeal of denial of preliminary injunction mooted by intervening event).

In this case, Plaintiff's request for a preliminary injunction is moot because the subsequent event of local certification of election results means "it no longer presents a live controversy with respect to which the court can give meaningful relief." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004). Mootness is jurisdictional—because a federal court

may only adjudicate cases and controversies, a ruling that cannot provide

meaningful relief is an impermissible advisory opinion. *Id*.; *Brooks v. Ga. State Bd.*

*of Elections*, 59 F.3d 1114, 1118 (11th Cir. 1995).

Because this Court cannot give Plaintiffs the full relief they seek, their

motion for preliminary injunction should also be denied on this basis.

**IV. No defendant class should be certified and Gwinnett County is not a proper class representative.**

Plaintiffs have not sought certification of a class in their Complaint or in

their Motion, and this Court should not certify a class for purposes of entering a

preliminary injunction. Class certification can only be granted by motion, and

Plaintiffs have sought no such relief at this point in the proceeding. *See* Fed. R.

Civ. P. 7(b)(1); *see United Steelworkers of Am., AFL-CIO-CLC v. Connors Steel*

*Co*., 855 F.2d 1499, 1500 (11th Cir. 1988) (describing hearing on both a motion for

class certification and a motion for preliminary injunction); *Dodson v. Parham*,

427 F.Supp. 97, 100 (N.D. Ga. 1977) (granting class certification and preliminary

injunction only after motion for certification and two-day evidentiary hearing).

The issue of the purported class of defendants proposed by Plaintiffs will

require extensive briefing, in significant part because the Gwinnett BORE is not an

appropriate class representative for a potential class action.[8] Unlike other defendant classes, there is no joint effort of election officials from 159 counties beyond the statutory framework. *Compare Research Corp. v. Pfister Associated Growers, Inc*., 301 F. Supp. 497, 502 (N.D. Ill. 1969) (allowing defendant class when conspiracy among class members had been proved). The Gwinnett BORE further has no incentive or ability to protect the interests of every election official in the state of Georgia related to Plaintiffs' claims (especially because it has no way of knowing those interests), making it an inappropriate class representative. Fed. R. Civ. P. 23(a)(4), *Canadian St. Regis Band of Mohawk Indians by Francis v. State of N.Y*., 97 F.R.D. 453, 457 (N.D. N.Y. 1983) (dismissing several defendants as representatives of defendant class when they had varying interests, willingness, and ability to defend the suit).

The Gwinnett BORE has no knowledge about how other counties are handling absentee ballot processes, although it assumes that other counties follow existing law. The Gwinnett BORE has no knowledge of whether other counties

---

[8] Having a proper class representative is only one of the elements required to certify a class. Federal Rule of Civil Procedure 23(a) sets forth the prerequisites for a class action and provides that a class of defendants may be certified only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the defenses of the class representatives are typical of the defenses of the class; and (4) the class representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

have different processes or handle the notification process differently. Ledford
Dec. at ¶ 9.

Plaintiffs apparently named the Gwinnett BORE because of its prior
involvement in litigation related to absentee ballots. But Gwinnett's visibility came
in large part because it is one of the few counties that enters all of its applications
and ballots into the Secretary of State's ENET system. As was briefed extensively
in *Martin v. Kemp*, Case No. 1:18-cv-04776-LMM and *Ga. Muslim Voter Project
v. Kemp*, Case No. 1:18-cv-04789-LMM, there is no method of effectively
comparing Gwinnett's rejection rate to any other county that does not use ENET
for all of its applications and ballots.

While Plaintiffs apparently believe that the taxpayers of Gwinnett County
should be saddled with the costs of statewide litigation (and possibly Plaintiffs'
attorneys' fees for its constitutional claims), Plaintiffs can easily identify and join
all of the required superintendents—which they especially should do in light of
their as-applied constitutional claims. This approach would also ensure that all
taxpayers bear the burden equally for the costs of litigation brought by Plaintiffs

instead of saddling the one county chosen by Plaintiffs with the entirety of that burden.[9]

## V. Plaintiffs do not have standing to pursue the injunction they seek.

Article III standing requires that a claimed injury be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S. Ct. 2743, 2752 (2010). Plaintiffs appear to claim to have standing in two ways:

**Organizational standing.** Plaintiffs claim that that the actions of processing ballots in accordance with statutory procedures "frustrates" their organizational mission. [Doc. 1 at ¶ ¶ 21-22]. Plaintiffs also claim they had to "divert resources" to notify voters, turn them out in the elections, and assist voters in the voting process. [Doc. 1 at ¶¶ 23-26]; Hart Dec. at ¶¶ 6-15; Groh-Wargo Dec. at ¶¶ 5-14.

---

[9] Class status is also inappropriate because "questions of law or fact common to class members" do not predominate. Fed. R. Civ. P. 23(b)(3). As discussed above, Plaintiffs have not shown that their facial challenges are likely to succeed, and if there are no facial challenges, there are no common questions to be resolved and there are no common questions that could predominate, because Plaintiffs will have to present evidence of individual county practices. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359, 131 S.Ct. 2541 (2011); *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1268 (11th Cir. 2009).

**Associational standing.** Plaintiffs claim that they can bring these actions on behalf of their members, which include elected officials and voters themselves. [Doc. 1 at ¶¶ 27-28]; Hart Dec. at ¶¶ 16-18.

Significantly, while pleading only organizational and associational standing, Plaintiffs are seeking vindication of individual voters, despite not having a single voter as a plaintiff in this case.

*A. Plaintiffs have not shown they diverted any resources from what they would otherwise be doing in a campaign.*

As outlined in their nearly identical declarations, the representatives of each of the Plaintiff organizations claim that they will have to "divert" resources because of existing statutory law. While lengthy, the described activities appear to be exactly what any campaign would be doing while urging voters to support their chosen candidate. Plaintiffs have not described how complying with existing law differs from what they would have done if the challenged laws had not been in place—because they likely still would have in been engaged in identical activities.

In *Common Cause/Georgia*, the Eleventh Circuit found an organizational plaintiff had standing to challenge Georgia's photo identification law because plaintiffs presented evidence related to costs it incurred that were separate from its mission. The NAACP presented evidence that it had to stop its efforts to get voters to the polls (part of its organizational mission) and instead help voters obtain photo

- 23 -

identification because of the change in Georgia law. *Common Cause/Georgia*, 554 F.3d at 1350. Those are clearly different efforts, with the latter being undertaken as a result of a change in the law, not as a result of existing law.[10]

Other cases from the Eleventh Circuit that found organizational standing also showed plaintiffs who stopped doing one thing and started doing something different to show they had actually diverted resources. In *Browning*, it was a new voter verification requirement that had not yet been used in an election, where some voters had been wrongly rejected by the defendant. 522 F.3d at 1157-58. In *Common Cause/Georgia*, it was helping voters obtain photo identification in a challenge to the state's new photo identification law. 554 F.3d at 1353-55. In *Ga. Latino Alliance for Human Rights*, it was the cancellation of citizenship classes to address inquiries about a new immigration law. *Ga. Latino Alliance for Human Rights v. Governor of Ga.*, 691 F. 3d 1250, 1260 (11th Cir. 2012). In *Arcia*, it was a new list maintenance program from the state that required action. *Arcia v. Fla. Sec. of State*, 772 F.3d 1335, 1340 (11th Cir. 2014).

---

[10] To the extent Plaintiffs are claiming their diversion of resources is that they spent resources to research the issues for this case, the Eleventh Circuit is clear that a plaintiff "cannot bootstrap the cost of detecting and challenging the illegal practices into injury for standing purposes." *Florida State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008).

Each of those cases is completely unlike the alleged basis for Plaintiffs to have standing in this case. It is unclear how complying with laws that have been on the books for decades frustrates Plaintiffs' organizational mission, except that their preferred candidates received less votes. Plaintiffs also do not explain how all of the listed activities are any different from a normal campaign's activities sufficient for this Court to consider it a "diversion" of resources.

> B. Plaintiffs have not shown their alleged injuries are traceable to actions of Gwinnett County.

An alleged injury must be traceable to the challenged conduct to constitute an injury in fact. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409, 133 S.Ct. 1138 (2013). All of the harm suggested by Plaintiffs is speculative: they were worried that the cure period may not be long enough or that Gwinnett County had changed its activities regarding absentee ballots, which may lead to a voter not taking curing within the statutory period, which may lead to that voter's vote not counting, so they had to spend money reach out to voters they were already trying to reach.[11]

---

[11] Even further speculation is required because Plaintiffs would also have to demonstrate that the rejection of a voter's ballot was not due to the voter's actions. When a voter failed to provide an address on his application for an absentee ballot, the Eleventh Circuit determined he lacked standing to assert a violation of his rights because the injury was not traceable to the actions of the defendants. *Swann v. Secretary*, 668 F.3d 1285, 1288 (11th Cir. 2012).

Like the Plaintiffs in *Clapper*, the decision to expend resources based on a nonparanoid fear is not enough to confer standing, because the injury must be traceable and imminent. 568 U.S. at 409. Plaintiffs have shown neither as to Gwinnett County. The only individual voter who even claims to have had problems voting is not a resident of Gwinnett County. Tate Dec. at ¶ 2. Further, Plaintiffs also claim that they will need to continue diverting resources into a runoff election. Without further evidence or a single voter that has suffered this kind of imagined harm, such harm is simply in the realm of speculation and conjecture. *See Whitmore v. Arkansas*, 495 U.S. 149, 158-159, 110 S.Ct. 1717 (1990) (collecting cases on potential future injury).

   *C. Plaintiffs have not shown that their proposed injuries are redressable.*

To have standing, any harm to Plaintiffs must also be "redressable by a favorable ruling" to confer standing. *Monsanto Co.*, 561 U.S.at 149. Even if this Court were to enter an injunction in favor of Plaintiffs on all points, they have not shown how that solves their diversion problem—if anything, Plaintiffs would have to expend *even more* resources notifying voters of the new procedures put in place by an injunction and following up with the same voters they claim to have been helping all along. The fact that the harm alleged by Plaintiffs is not remedied by a favorable ruling further demonstrates that they lack standing to assert these claims.

*D. Plaintiffs claim to associational standing should be denied because actual voters are needed to address the issues raised.*

Plaintiffs also claim to have associational standing based on the alleged harm to their members. But to show associational standing, Plaintiffs must also show that (1) its members otherwise have standing to sue in their own right; (2) the interests the plaintiff-association seeks to protect are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested must require the participation of the association's members. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805 (11th Cir.1993).

While Plaintiffs can meet the first two requirements—because individual voters have standing to sue and the claims are related to elections, which are the organizational purposes for both groups—Plaintiffs fail on the third requirement. Even with the allegations in Plaintiffs' motion, it is apparent that individualized determinations will be required. As outlined in the Secretary of State's brief and declarations, Ms. Tate did not change her address before the deadline. Plaintiffs' Motion pp. 14-16. Ms. Tate is the only voter Plaintiffs have cited directly so far (the rest of the declarations attached to Plaintiffs' motion contain alleged general problems that do not contain specific identifying information, *see* Mulholland Dec. at ¶¶ 10-11, Knowles Dec. at ¶¶ 8-9).

- 27 -

The asserted relief requires the participation of the members, because the right to vote is an individual right. While Plaintiffs claim to be vindicating individual rights, they have not shown that they are capable of doing so as associations.

   *E. There are limits to standing, even in the election context.*

Ultimately, if this Court finds Plaintiffs have standing based on the current record, the doctrine of standing becomes almost meaningless in the election context. Any candidate or political party will be able to bring a lawsuit challenging any part of Georgia's Election Code, regardless of whether anyone has actually been harmed or may be harmed but based solely on the need to use resources to educate or assist voters in an *existing* statutory framework. Plaintiffs must be required at the very least plead that they are doing something different than a normal campaign would do and explain how an injunction proposing an entirely new scheme for handling absentee and provisional ballots will remedy their alleged harm.

## <u>CONCLUSION</u>

Plaintiffs have not presented sufficient evidence that they have standing to seek a preliminary injunction. But even if they have and their claim for relief is not moot, this Court should deny their motion because they have not shown they are

likely to succeed on their constitutional challenges, they have not shown the

equities favor granting an injunction, and entering an injunction at this point in the

election process will not serve the public interest.

<u>Certification</u>

I certify that this brief has been prepared in a Times New Roman 14-point

font, one of the font and point selections approved by the Court in Local Rule

5.1(C).

Respectfully submitted this 13th day of November, 2018.

/s/ Bryan P. Tyson
Frank B. Strickland
Georgia Bar No. 687600
fbs@sbllaw.net
Anne W. Lewis
Georgia Bar No. 737490
awl@sbllaw.net
Bryan P. Tyson
Georgia Bar No. 515411
bpt@sbllaw.net
STRICKLAND BROCKINGTON
  LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309
(678)347-2200

RICHARD A. CAROTHERS
Georgia Bar No. 111075
richard.carothers@carmitch.com

Brian R. Dempsey
Georgia Bar No. 217596
Brian.dempsey@carmitch.com
CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, GA 30518
(770) 932-3552

*Attorneys for the Gwinnett County Board of Registrations and Elections*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

THE DEMOCRATIC PARTY OF
GEORGIA, INC., et al.,

      Plaintiffs,

vs.

ROBYN A. CRITTENDEN, in her
official capacity as the Secretary of
State of Georgia; et al.,

      Defendants.

Civil Action No.: 1:18-cv-5181-SCJ

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this date electronically filed the foregoing

**DEFENDANTS STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK,**

**BEN SATTERFIELD, AND BEAUTY BALDWIN'S RESPONSE IN**

**OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY**

**INJUNCTION** with the Clerk of the Court using the CM/ECF system which will

automatically send email notification of such filing to the attorneys of record listed

on the case.

This 13th day of November, 2018.

/s/ Bryan P. Tyson
Bryan P. Tyson
Georgia Bar No. 515411