**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **THE DEMOCRATIC PARTY OF GEORGIA, INC., AND AFG GROUP INC.,** | * <br> * <br> * <br> * |
| **Plaintiffs,** | * <br> * **Civ. Action No. 1:18-cv-5181-SCJ** |
| **v.** | * <br> * |
| **ROBYN A. CRITTENDEN, in her official Capacity as Secretary of State for the State of Georgia, et al.,** | * <br> * <br> * <br> * |
| **Defendants.** | * |

**SECRETARY OF STATE'S RESPONSE TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Having waited almost a full week after the State's general election, Plaintiffs now seek, through an emergency preliminary injunction, to have the Court judicially re-write the State's voting laws. Specifically, Plaintiffs are requesting this Court to issue an order that 1) delays the certification of the November 6, 2018 general election beyond the statutory deadline; 2) requires county registrars to accept absentee mail-in ballots with missing or insufficient oath information; 3) reopens and extends the statutorily expired cure period, one week *post*-election, to allow untimely cure of provisional ballots; 4) requires counties to treat provisional ballots cast by voters registered in another county as if they had cast ballots within

1

the same county (albeit wrong precinct); and 5) unwinds the certifications of counties already certified consistent with the foregoing, among other relief.  (*See* Emergency Motion for Preliminary Injunction and Incorporated Memorandum of Law in Support (the "Motion"), p. 1). Plaintiffs' motion is premised not on actual facts, but instead only by broad, unsupported assumptions and a few anecdotal, isolated incidents that have nothing to do with the alleged unconstitutionality of the statutes at issue. Furthermore, Plaintiff's requested relief, if granted, would cause a ripple effect throughout the electoral system, resulting in delays in preparing for the upcoming runoff elections, which could actually result in the disenfranchisement of voters. For the reasons stated below, Plaintiffs have completely failed to carry their substantial burden for obtaining extraordinary and unprecedented relief they seek, and the Court should therefore deny the motion.[1]

**Georgia's Statutory Framework**

---

[1] By email of 3:18 p.m., November 12, 2018, Plaintiffs' counsel reported a conversation with Judge Batten wherein the Court indicated that "the Gwinnett county absentee ballot issues have been severed from the statewide provisional ballot issues" and would "remain as a related case before Judge Leigh May. . . . As to the provisional ballot claims, that part of the case will receive a case number tomorrow. . . ."  A true and correct copy of the email is attached hereto as Exhibit "A."  In reliance on that email, Defendant Crittenden does not respond herein to the portions of Plaintiffs' brief addressing the Gwinnett County absentee ballots. Defendant Crittenden will briefly address the requested relief as to absentee ballots as it pertains to other 158 counties in Georgia, to the extent that is even still an issue and claim in this case.

**Provisional Ballots**

The Georgia Code allows for provisional ballots under specified circumstances.  *See* O.C.G.A. §§ 21-2-417(b)-(c), 21-2-418, and 21-2-419.  For example, if an elector is unable to produce any of the items of identification listed in O.C.G.A. § 21-2-417(a) (Georgia driver's license, voter identification card, U.S. passport, etc.), then he or she could vote a provisional ballot under O.C.G.A. § 21-2-417(b).  Another scenario for provisional ballots is provided under O.C.G.A. § 21-2-418(a), when a person shows up to a polling place in his or her county of residence stating a good faith belief that he or she has timely registered to vote in such county and the person's name does not appear on the list of registered electors.

The provisional ballot determination period in Georgia is governed by O.C.G.A. § 21-2-419(c), which states:

> (1)  If the registrars determine after the polls close, **but not later than three days following the primary or election**, that the person casting the provisional ballot timely registered to vote and was eligible and entitled to vote in such primary or election, the registrars shall notify the election superintendent and the provisional ballot shall be counted and included in the county's or municipality's certified election results.
>
> (2)  If the registrars determine after the polls close, **but not later than three days following the primary or election**, that the person voting the provisional ballot timely registered and was eligible and entitled to vote in the primary or election but voted in the wrong precinct, then the board of registrars shall notify the election superintendent. The

superintendent shall count such person's votes which were cast for candidates in those races for which the person was entitled to vote but shall not count the votes cast for candidates in those races in which such person was not entitled to vote. The superintendent shall order the proper election official at the tabulating center or precinct to prepare an accurate duplicate ballot containing only those votes cast by such person in those races in which such person was entitled to vote for processing at the tabulating center or precinct, which shall be verified in the presence of a witness. Such duplicate ballot shall be clearly labeled with the word "Duplicate," shall bear the designation of the polling place, and shall be given the same serial number as the original ballot. The original ballot shall be retained.

(3)  If the registrars determine that the person casting the provisional ballot did not timely register to vote or was not eligible or entitled to vote in such primary or election or shall be unable to determine within three days following such primary or election whether such person timely registered to vote and was eligible and entitled to vote in such primary or election, the registrars shall so notify the election superintendent and such ballot shall not be counted. The election superintendent shall mark or otherwise document that such ballot was not counted and shall deliver and store such ballots with all other ballots and election materials as provided in Code Section 21-2-500.

O.C.G.A. § 21-2-419(c)(emphasis supplied).  For the November 6, 2018 general election, the determination period ended on Friday, November 9, 2018.[2]

---

[2] The only exception is provisional absentee ballots rejected due to a non-matched signature, which can be verified until county certification pursuant to a court order from District Judge Leigh Martin May.

4

**Absentee Ballots**

Georgia voters may apply to vote by absentee ballot by applying in writing to their county election office.  O.C.G.A. § 21-2-381(a)(1)(C).  The absentee ballot application may be sent by letter, fax, or email.  Once a voter completes his or her absentee ballot, that ballot is placed in an envelope with no markings identifying the voter, i.e., the inner envelope.  That inner envelope is placed inside a second envelope with an oath that the elector, or in the case of an illiterate or disabled voter, someone assisting the voter, signs.  The form of the oath is set out in O.C.G.A. § 21-2-384(c)(1) and provides for the voter's signature, their year of birth, and the elector's address.  All identifying information is intended to assist county election officials in identifying the voter.

State law provides further that the county election official must compare the information on the oath to the voter's information on file, including a comparison of the signatures, to verify the identity of the voter.  Election officials are directed to reject ballots where there is a missing signature, or a signature does not match, or "required information" is missing or inaccurate.  O.C.G.A. § 21-2-386(a)(1)(C).  The Georgia Supreme Court has held that while § 21-2-386(a)(1)(C) provides a basis upon which an election official *may* reject an absentee ballot, rejection is not mandatory.  *See Jones v. Jesup*, 279 Ga. 531, 533 n. 5 (2005).  In other words,

5

what is required is that the county election official can confirm the identity of the voter with the information that *is* provided.  In some circumstances the year of birth may be required to distinguish between voters with the same name living in the same county.[3]  However, where the year of birth is not necessary to confirm the identity of the voter, it is not otherwise required by O.C.G.A. § 21-2-386(a)(1)(C).

## STANDARD OF REVIEW

A TRO or preliminary injunction is appropriate where the moving party demonstrates that:  (a) there is a substantial likelihood of success on the merits; (b) the TRO or preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the preliminary injunction would cause to the non-movant; and (d) preliminary injunction would not be adverse to the public interest.  *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001).  Such injunctive relief "is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion."  *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 573 (11th Cir. 1974).  The burden of persuasion as to all four requirements is on the movant. *United States v. Jefferson County*, 720 F. 2d 1511 (11th Cir. 1983).

---

[3] The oath was amended in 2017 to require year of birth, rather than day and month of birth.  The oath appears on the outside of the mailing envelope and a voter's day and month of birth are protected information pursuant to O.C.G.A. § 21-2-225(b).

The standards for granting injunctive relief are high. "An injunction can issue only after the plaintiff has established that the conduct sought to be enjoined is illegal and that the defendant, if not enjoined, will engage in such conduct." *United Trans. Union v. State Bar of Mich.*, 401 U.S. 576, 584 (1971). The Eleventh Circuit has instructed its district courts to be even more tentative in issuing injunctions when the party to be enjoined is a state official, stating: "[t]here is not an absolute right to an injunction in a case in which it would impair or affront the sovereign powers or dignity of a state." *McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 487-88 (11th Cir. 1996).

Additionally, in election cases courts should give consideration to the proximity of the election and the potential for any voter confusion from a last minute change to the State's processes. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Even in cases where a Plaintiff *is* likely to prevail, "issuing an injunction on the eve of an election is an extraordinary remedy with risks of its own." *Colón-Marrero v. Conty-Pérez*, 703 F.3d 134, 139 n. 9 (1st Cir. 2012). Here, Plaintiffs seek an injunction almost a full week *after* the election and just a day prior to certification of the results.

Here, Plaintiffs have not shown a likelihood of success on the merits of their constitutional claims. Additionally, Plaintiffs waited until the holiday weekend

before the deadline for certification of the results to bring their complaint and emergency motion.  For these reasons, the equities weigh in favor of denying the emergency relief.

## ARGUMENT AND CITATION OF AUTHORITY

**A.    Plaintiffs are not substantially likely to succeed on any of their claims.**

**1.    Georgia's provisional ballot statutes are Constitutional as applied.**

Plaintiffs contend that the three-day determination period in O.C.G.A. § 21-2-419(c) for verifying provisional ballots is unconstitutional as applied **this year**, apparently conceding that the statute is Constitutional as drafted.  Plaintiffs' entire theory depends on what it repeatedly characterizes as "historic" numbers of provisional ballots "this year" and leap to the conclusion that the three-day period was not enough.  But Plaintiffs do not cite any actual **evidence** of such "historic" numbers of provisional ballots or that such numbers resulted in valid provisional ballots across the state of Georgia not being counted.  There is no evidence that the three-day period provided in O.C.G.A. § 21-2-419(c) was unconstitutional this year (or any other year).  Plaintiffs have the burden to show "substantial likelihood" of success, not a mere suspicion or hope, yet there is a lack of evidence to support Plaintiffs' central theory.

Aside from the lack of evidence of the three-day determination period unduly disenfranchising voters, the State has a legitimate interest in establishing a timeline to certify elections. The Supreme Court has long recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown*, 415 U.S. 724, 730 (1974). The right to vote is protected by both the First Amendment and the Fourteenth Amendment's Equal Protection Clause. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Bush v. Gore*, 531 U.S. 98, 104-105 (2000). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). Georgia's provisional ballot statutes do not severely burden the rights of voters.[4]

---

[4] In fact, in *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009), the Eleventh Circuit affirmed the constitutionality of O.C.G.A. § 21-2-417, holding that the burden imposed on Georgia voters who lack photo identification was not undue or significant.

To the contrary, by permitting provisional voting, the statutes expand the franchise.[5]

Moreover, establishing a timeline for determination and certification is essential to the election process. The three-day determination period allows time to consider which provisional ballots are to be counted and included in the certified election results, and therefore would have to be completed before final counting and certification. Thus, after the three-day determination period for provisional ballots expires, the Georgia code provides another three days for the counties to count all of the votes and certify the results (four days this year due to Veterans Day). The three day determination period for provisional ballots is essential to timely counting and certification.

Timely certification is critically important because a number of other processes cannot happen until counties certify their election results. (Decl. of Chris Harvey, Ex. 1 hereto). The Secretary of State cannot certify results until all of the counties certify first. (Id.) Election challenges and recount requests also

---

[5]In *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802 (1969), the Supreme Court recognized that States are permitted to expand the franchise, in a non-discriminatory manner, even where the resulting regulatory system is not perfect. 394 U.S. at 809-810. *See also Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 209 (Scalia, J., concurring in the judgment ("That the State accommodates some voters by permitting (not requiring) the casting of absentee or provisional ballots, is an indulgence – not a constitutional imperative that falls short of what is required").

require the county superintendents and the Secretary of State to certify the results before those processes can begin. *See* O.C.G.A. §§ 21-2-495(c) and 21-2-524(a). Any change in final vote counts after a recount will require recertification, thereby further delaying the process. (Decl. of Chris Harvey). Finally, with any potential run-off election set by law for 28 days after the election, certified results are needed in order for:

(a)     Electronic ballot databases to be built for any run-off. O.C.G.A. § 21-2-501(a);

(b)     Electronic ballots to be proofed, which generally requires multiple back and forth between the county and Secretary of State's office as errors are discovered;

(c)     Paper ballots to be proofed (same as above);

(d)     Sufficient paper ballots to be ordered, printed, and delivered. Delays in this process will lead to delays in counties sending out absentee ballots and make it much more difficult for UOCAVA (oversees and military) voters to timely receive their absentee ballot and return it in time for the runoff.

(e)     Scheduling and posting notice of mandated Logic & Accuracy testing of all voting machines to be used for advance voting and Election Day.

(f)     Conducting Logic & Accuracy testing for advance voting and Election Day. (Decl. of Chris Harvey).

Early voting begins as soon as possible prior to a runoff from a general election.  O.C.G.A. § 21-2-385(d)(1).  Any delay in certification, even a day, may likely have a direct impact on the number of early voting days provided for a runoff.  (Decl. of Chris Harvey). Currently, it appears that there will be statewide runoffs in every county in the state as well as local election runoffs on December 4 in Monroe, Habersham, Banks, Stephens, Coweta, Worth, Quitman, Camden, Richmond, Brantley, Pulaski, and Turner Counties.   (Decl. of Chris Harvey). Efficient administration of each of these elections will be interrupted if certification is delayed.  (Id.)

Thus, timely certification is of paramount importance and clearly a legitimate state interest.

In sum, Georgia's longstanding election statutes have minimal, unequivocal voting requirements and procedures that Plaintiffs want ignored, along with the necessary timelines for election certification.  These statutes have legitimate and necessary purposes to protect the sanctity of our elections and cannot be ignored. The State follows these statutory procedures for good reason, instructs the counties to likewise follow these procedures, and is not aware of any defiance of such

mandates.  Plaintiffs are not entitled to unwind the election that occurred a week ago, following election procedures enacted for decades, and that has already been certified by the majority of counties.  At most Plaintiffs seek to argue over isolated instances where law allegedly was not followed, not that it is unconstitutional or created widespread disenfranchisement.  In this regard, Plaintiffs essentially seek a recount without contesting the election under O.C.G.A. § 21-2-522.  Even if Plaintiffs' claims were meritorious, contesting the election would be the remedy and bars Plaintiffs' claims for injunctive relief.

### 2. Georgia's county voting statutes are Constitutional as applied.

Plaintiffs seek an order requiring counties to treat provisional ballots cast by a voter registered in another county as if they had cast ballots within the wrong precinct of the same county as described by O.C.G.A. § 21-2-419(c)(2).  (Motion, p. 3).  Plaintiffs contend that rejecting provisional ballots cast in a county other than that in which the voter resides is unconstitutional.  While this argument is vague, it is not supported by any evidence and falls far short of showing a "substantial likelihood" of success on the merits.

As with the discussion above, Plaintiffs have not proved that any voters have been unduly disenfranchised.  Plaintiffs also fail to articulate why this Court should expand the rule of O.C.G.A. § 21-2-419(c)(2) to apply to all circumstances where a

voter is registered in another county merely because one or more of the elections was a state wide race.  The State has a legitimate interest in requiring voters to vote in the county of their residence, and this is not unduly burdensome.  *See* O.C.G.A. § 21-2-218(f) ("No person shall vote in any county or municipality other than the county or municipality of such person's residence," except an elector who moves from one county or municipality to another after the fifth Monday prior to an election may vote in the county or municipality in which he or she is registered to vote).

This Court has recognized the constitutionality of reasonable residency requirements:

> As the Supreme Court of the United States has emphasized, the [**11]  defendant registrars are "free to take reasonable and adequate steps, as have other States, to see that all applicants for the [right to register to] vote actually fulfill the requirements of bona fide residence. . . ." Carrington v. Rash, 380 U.S. 89, 96; 85 S. Ct. 775, 13 L. Ed. 2d 675, 680 (1965). Defendant registrars and Georgia ". . . have the power to require that voters be bona fide residents of the relevant political subdivision. . . ."

> Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d
> 274 (1972).

*McCoy v. McLeroy*, 348 F. Supp. 1034 (M.D. Ga. 1972). Accordingly, Georgia's laws requiring a voter to vote in his or her county of residence are constitutional.

### 3.   Georgia's absentee ballot statutes are Constitutional as applied.

The State understands that this case no longer involves absentee ballot issues.  In any event, such claims fail for the same reasons discussed above. Plaintiffs have not presented actual evidence that absentee ballots were unduly or improperly rejected.   Mere speculation cannot satisfy Plaintiffs' burden of demonstrating substantial likelihood of success.

The State has a legitimate interest in requesting, and even requiring, information such as year of birth and residence address to assist county election officials in confirming the identity of the voter.   No court, to Defendant's knowledge, has struck down a statutory requirement that identifying information, such as year or date of birth, accompany the absentee ballot.   This is true even where the failure to include the information led to a rejection of the absentee ballot.

The Georgia Supreme Court has interpreted § 21-2-386(a)(1)(C) in a manner that limits the requirement for information about year of birth (or date of birth in

15

the prior statute) to instances where the county election official cannot confirm the identity of the voter without it. *Jones*, 279 Ga. at 533. In some circumstances the year of birth may be required to distinguish between voters with the same name living in the same county. While Defendant contends that the statute is facially constitutional under any reading, the Georgia Supreme Court's narrowing interpretation further limits any burden the statute may impose on voters.

> States "'have broad powers to determine the conditions under which the right of suffrage may be exercised.'" *McDonald v. Bd. of Election Comm'rs of Chicago,* 394 U.S. 802, 807, 22 L. Ed. 2d 739, 89 S. Ct. 1404 (1969) (quoting *Lassifer v. Northampton County Bd. of Elections,* 360 U.S. 45, 50, 3 L. Ed. 2d 1072, 79 S. Ct. 985 (1959)). This is especially true in the context of absentee ballots, because there is no fundamental right to vote by absentee ballot.

*Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1370 (S.D. Fla. 2004). "State election laws which regulate the mechanics of voting are 'reasonable, nondiscriminatory restrictions' that are generally sufficient to justify any restrictions imposed by the election laws." *Id.* at 1374 (quoting *Burdick*, 504 U.S. at 434).

## B.     Plaintiffs Cannot Show That They Will Suffer Irreparable Harm.

Plaintiffs have not shown that they will suffer irreparable harm. "A showing of irreparable harm is the 'sine qua non' of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). When a plaintiff has not

16

shown a likelihood of success on the merits, claims for irreparable injury based on an alleged constitutional injury have no merit. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Here, Plaintiffs have failed to show a likelihood of success of the merits and therefore have failed to show irreparable harm. Moreover, Plaintiffs have shown *no harm* because they have failed to show how the three-day determination period (or requiring further review of absentee ballots rejected solely for missing or insufficient oath information) would change the outcome of the election. In fact, Plaintiffs' argument presumes that the admittedly deficient ballots would nevertheless be sufficient to validate a vote, and in sufficient quantities to change the election. There is no evidence (or even allegation) of intentional misconduct considering these ballots, only mere speculation and presumption.

Moreover, if Plaintiffs' claims had merit, the remedy would be to contest the election under O.C.G.A. § 21-2-522, so there can be no irreparable harm here.

### C.    The Damage to the Defendant Outweighs Any Alleged Injury to Plaintiffs.

County certification for the 2018 general election is due today, Nov. 13, 2018. The Secretary of State's Office must certify the results by Nov. 20, 2018. (Decl. of Chris Harvey). Chris Harvey also explains that recount requests and

17

election contests cannot begin prior to certification of the results. *Id.* ¶ 5. Additionally, preparation for the statewide run-off elections on Dec. 4, 2018 must start as quickly as possible and requires that certification of the current election have ended. *Id.* at 5. Chris Harvey has submitted testimony that any delay in the certification of the election will have a direct impact on the number of days available for early voting in the run-off election.

The Supreme Court has repeatedly recognized the importance of not upsetting a state's election process with last minute changes to its process. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006); *Benisek v. Lamone*, 138 S. Ct. 1942 (2018). Thus, Plaintiffs have not met their burden for a preliminary injunction. *See Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).

### D.   An Injunction Would be Adverse to the Public Interest.

Plaintiffs' proposed injunction is not in the public interest because of the disruption it would cause in certification of the election and preparation for the run-off election. Moreover, the proposed injunction is against the public interest because Plaintiffs delayed in bringing the action.

Plaintiffs seek a delay in the certification of the election results which will be adverse to the public interest. As explained above, election certification is needed so that the state and counties can prepare for a statewide run-off election.

18

Moreover, the crux of Plaintiffs' theory is to have this Court overrule longstanding election procedures after votes were cast and results revealed. The State of Georgia and its citizens have an interest in enforcing laws, not ignoring them.

### E.    Plaintiffs' claims are barred by Plaintiffs' delay.

Plaintiffs' claims are also barred by Plaintiffs' delay. A party requesting a preliminary injunction must generally show reasonable diligence. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). That is as true in election law cases as elsewhere. *Id.; Lucas* v. *Townsend*, 486 U. S. 1301, 1305 (1988) (Kennedy, J., in chambers); *Fishman* v. *Schaffer*, 429 U. S. 1325, 1330 (1976) (Marshall, J., in chambers). Here, Plaintiffs have waited until nearly a week *after* the election to bring their claim. Plaintiffs provide no reason for their late filings. Indeed, this Court held a hearing on similar challenges weeks ago in cases cited repeatedly by Plaintiffs. The hearing was well attended by media outlets and widely reported in the media. There is simply no excuse for Plaintiffs' delay in bringing this action. "An inexcusable delay can only occur after the plaintiff discovers or should have discovered the facts giving rise to his or her cause of action." *Marcellus v. Va. State Bd. of Elections*, 2015 U.S. Dist. LEXIS 120584 at *17 (E.D. Va. 2015).

Courts have frequently found laches based on unreasonable delay in the election context.  In *Perry v. Judd*, 471 Fed. Appx. 219 (4th Cir. 2012), the Fourth Circuit affirmed the denial based on laches of an emergency motion seeking injunctive relief in a constitutional challenge brought by former Texas Governor Rick Perry to two Virginia statutes setting forth requirements for circulation petitions for ballot access: "Plaintiffs had every opportunity to challenge [the Virginia statutes] at a time when the challenge would not have created the disruption that this last-minute lawsuit has.   [Plaintiffs] request contravenes repeated Supreme Court admonitions that federal judicial bodies not upend the orderly progression of state electoral processes at the eleventh hour.  [Plaintiffs] knew long before now the requirements of Virginia's election laws.  There was no failure of notice.  The requirements have been on the books for years."  *Perry*, 471 Fed. Appx. at 220-21.  The Court went on to state that eleventh hour changes to an otherwise orderly election process are "not just caution lights to lower federal courts; they are sirens." *Id.* at 228.  The Fourth Circuit's admonition in *Perry* is equally applicable here.

Many other courts have rejected untimely challenges to election laws based on laches. *Marshall v. Meadows*, 921 F. Supp. 1490, 1493-94 (E.D. Va. 1996) (laches barred challenge to Virginia open primary law when plaintiffs filed

suit 95 days before the challenged primary was scheduled to take place, noting that "plaintiffs have slept on their rights"); *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (laches barred claim when plaintiff waited 11 weeks to file suit as election approached); *Marcellus v. Va. State Board of Elections*, 2015 U.S. Dist. LEXIS 120584 (E. D. Va. 2015) (finding laches when plaintiffs challenge statute that had been in effect for 14 years); *Soules v. Kauaians for Nukolii Campaign Committee*, 849 F. 2d 1176 (9th Cir. 1988) ("The record establishes without dispute that appellants knew the basis for their alleged equal protection challenge well in advance of the proposed special election  . . . [and] district court did not error in barring . . . relief on the ground of laches.")  Finally, there can be no doubt that Plaintiffs' requested relief would result in significant prejudice to the Defendants.  (*See* Decl. of Chris Harvey).

As the Fourth Circuit explained in *Perry*, "[b]allots and elections do not magically materialize.  They require planning, preparation, and studious attention to detail if the fairness and integrity of the electoral process is to be observed." *Perry*, 471 Fed. Appx. at 226.  Moreover, last-minute challenges to election laws result not only in prejudice to governmental defendants who must administer and supervise the elections, the "public is potentially prejudiced as well, as [governmental defendants] are charged with ensuring the uniformity, fairness,

accuracy, and integrity of [the state's] elections."   Serious disruption to state electoral processes is thus directly against the public interest in having an orderly and election.  *Id.* at 227.

## CONCLUSION

Because Plaintiffs cannot satisfy the standards for a preliminary injunction, their request should be denied.

Respectfully submitted this 13th day of November, 2018.

> Christopher M. Carr
> Attorney General
> Georgia Bar No. 112505
>
> Annette M. Cowart
> Deputy Attorney General
> Georgia Bar No. 191199
>
> Russell D. Willard
> Senior Assistant Attorney General
> Georgia Bar No. 760280
>
> */s/ William C. Collins, Jr.*
> William C. Collins, Jr.
> Special Assistant Attorney General
> Georgia Bar No. 178847
> *Attorneys for Secretary of State Robyn Crittenden*

**Burr & Forman LLP**
171 Seventeenth Street, NW
Suite 1100
Atlanta, Georgia 30363
(404) 815-3000
(404) 817-3244

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that this document has been prepared in Times New Roman, 14-point font, which is one of the fonts and point selections approved by the Court in Local Rule 5.1(B)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **SECRETARY OF STATE'S RESPONSE TOPLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** has been electronically filed and with the Clerk of the Court via the CM/ECF system on this the 13th day of November, 2018:

Halsey G. Knapp, Jr., Esq.                Dara Lindenbaum, Esq.
Krevolin & Horst, LLC                     Sandler Reiff Lamb Rosenstein &
One Atlantic W. Peachtree Street, N.W.,   Birkenstock P.C.
Suite 3250                                1090 Vermont Avenue NW, Suite 750
Atlanta, GA 30309                         Washington, D.C. 20005


*Attorneys for AFG Group Inc d/b/a Stacey Abrams*
*for Governor and the Democratic Party of Georgia, Inc.*



                                          */s/ William C. Collins, Jr.*
                                          William C. Collins, Jr.
                                          Georgia Bar No. 178847
                                          Special Assistant Attorney General
                                          *Attorney for Secretary of State Robyn*
                                          *Crittenden*



**Burr & Forman LLP**
171 Seventeenth Street, NW
Suite 1100

Atlanta, Georgia 30363
(404) 815-3000
wcollins@burr.com