# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| THE DEMOCRATIC PARTY OF GEORGIA, INC., AND AFG GROUP INC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action File No. is 1:18-cv-5181-SCJ |
| ROBYN A. CRITTENDEN, in her official capacity as Secretary of State of the State of Georgia; STEPHEN DAY, JOHN MANGANO, ALICE O'LENICK, BEN SATTERFIELD, AND BEAUTY BALDWIN, in their official capacities as members of the Gwinnett County Board of Registration & Elections; and MICHAEL COVENY, ANTHONY LEWIS, LEONA PERRY, SAMUEL TILLMAN, and BAOKY VU, in their official capacities as members of the Dekalb County Board of Registration & Elections, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) | |
| GEORGIA REPUBLICAN PARTY, INC. | ) ) | |
| Proposed Defendant-Intervenor. | ) | |

## <u>INTERVENOR DEFENDANT GEORGIA REPUBLICAN PARTY'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER</u>

Intervenor Georgia Republican Party ("Republican Party") submits this Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction.  With this Brief, the Republican Party shows that Plaintiff (1) has failed to provide clear and convincing evidence to warrant the extraordinary relief it seeks; and (2) maintains adequate remedies that precludes the imposition of a federal injunction to stop the ongoing state certification efforts.

## INTRODUCTION

Plaintiffs' lawsuit raises facial challenges to Georgia statutes governing provisional and absentee ballots.  (Compl. ¶¶ 102 (citing O.C.G.A. § 21-2-386(a)(1)(C) (absentee ballots)); 119 (citing O.C.G.A. § 21-2-419 (provisional ballots)).)  Those statutes were first enacted, in some form or another, in 1924 and 2002.  The statutory schemes were last amended in 2010 (provisional) and 2012 (absentee).

Plaintiffs are familiar with the challenged portions of the Election Code.[1]  In fact, these statutes (and other aspects of Georgia election laws) campaign issues since at least the runoff election this summer.  For months they cited these

---

[1] Indeed, Plaintiffs issued an incorrect absentee ballot request form.  John Kauffman, *Error on Ballot Form Sent by Abrams Campaign Sparks Questions and Response* (Aug. 13, 2018), *available at* https://www.wabe.org/error-on-ballot-form-sent-by-abrams-campaign-sparks-questions-and-response/ (last accessed Nov. 13, 2018).

provisions and made false claims of "voter suppression" to anyone who would listen. Their political strategy, however, failed when a majority of Georgians elected Republicans again. After losing on Election Day, the Plaintiffs turned their attention to the judicial branch. Even then, Plaintiffs waited until four days after the election to raise any challenge – despite having a press conference announcing the lawsuit days before. Given these undisputed facts, neither the Democratic Party of Georgia ("Democrats") nor the Abrams for Governor Group ("Abrams Campaign") (collectively, "Plaintiffs") can show – by clear and convincing evidence – the type of immediate and irreparable harm or public interest that is served by an eleventh hour injunction to stop the certification process that has already occurred in the majority of Georgia counties.

Plaintiffs must know this. Perhaps that is why they are using this lawsuit as a means to raise funds for a potential election challenge (that would at least be more procedurally proper). Last night at 6:09pm and this morning at 9:40am, the Abrams Campaign sent more fundraising emails – at least the fifth since the election – asking for funds to help pay for this and other forms of litigation.[2]

---

[2] A true and accurate copy of Lauren Groh-Wargo's 6:09pm email is attached as "Exhibit 1." A true and correct copy of Stacey Abrams' 9:40am email is attached as "Exhibit 2." This Court can also take note of the Abrams's Campaign's attempted purchase over $250,000 of media advertisements promoting their need to raise money to fund litigation. See

Lawsuits are not for fundraising, and this Court should deny Plaintiffs' requested relief.

This is especially true given that Plaintiffs (or those affiliated with them) are not without a remedy.  State law allows them to challenge the election results.  Federal law allows them to maintain this lawsuit even if they lose the TRO.  In other words, losing the TRO is not fatal to Plaintiffs' claims; it just means that they are not entitled to stop the election process at the eleventh hour.  For these reasons and others, and this Court should deny Plaintiffs' Motion for Temporary Restraining Order ("Plaintiffs' Motion" or "TRO").

## FACTS

Plaintiffs acknowledge that their last ditch effort to challenge the overall election results would result in the wholesale rewriting of well-established Georgia election law by judicial fiat.  Standing alone, this warrants rejecting Plaintiffs' requested relief.  Worse yet, Plaintiffs seek this result without providing evidence of a single voter as a plaintiff.  Instead, the Democrats and Abrams Campaign themselves allege that the method by which counties process absentee and provisional ballots violates (1) the fundamental right to vote under the First and Fourteenth Amendment of the U.S. Constitution; (2) the due process clause of the

---

https://www.wsbtv.com/news/politics/georgia-gop-calls-denied-ad-buy-from-abrams-campaign-illegal/870005029

Fourteenth Amendment; and (3) the equal protection clause of the Fourteenth Amendment.  Based on these allegations, Plaintiffs ask this Court to impose a drastic remedy on the day that counties are to certify the election results as required under Georgia law, specifically to:

(1) Extend the certification deadline for counties until Wednesday November 14, 2018, contrary to Georgia law requirements (which Plaintiffs do not challenge);

(2) Require counties to accept absentee mail-in ballots that were improperly filled out and subject to voter fraud;

(3) Require counties to accept evidence from voters that would "cure" provisional ballots cast in the General Election;

(4) Order counties to treat ballots cast by out of county voters as simply out of precinct voters, in direct contravention of Georgia law;

(5) Order counties to "restore" votes as this Court may deem necessary; and

(6) Enjoin the Secretary of State from rejecting any elections returns certified and filed by counties responding to any order issued by this Court.

(See Pls. Emergency Mot. for Prelim. Inj. at Concl.)

In support of this drastic and wholly untimely relief, Plaintiffs submitted six declarations in support of their claims. Four are from officials and staff members of the Democrats and Abrams Campaign, and two are from prospective voters.

## I. <u>Democratic and Campaign Staffers</u>

Three of the staff member declarants –Groh-Wargo, DeHart, and Mulholland – fail to allege a single wrongful act by Defendants (beyond their own legal conclusions). Nevertheless, each assert that Defendants have somehow harmed them by causing a political party and a campaign to expend money to engage in a political campaign and win an election by assisting their voters and staffing voter hotlines. Of course, these activities are the very purpose of campaigns and political parties, and neither the Abrams Campaign nor the Democrats can claim harm from just doing their jobs.

Nevertheless, according to these declarants, if an injunction is not issued, Plaintiffs claim they will be forced to further expend resources (that they continue to solicit for) and that voters will be harmed by having their ballots rejected. However, Plaintiffs have provided zero evidence of an actual voter improperly having a ballot disregarded.[3]

---

[3] The fourth staff member declarant, Rachel Knowles, repeats similar allegations and further alleges that she witnessed the DeKalb County Board of Elections fail to

## II.   <u>Potential Voters</u>

The first prospective voter declarant, Ms. Terakesha Graves, alleges that she attempted to vote in DeKalb County despite being registered in Henry County.  Ms. Graves states that she has lived in DeKalb since 2016, but failed to re-register after moving to DeKalb from Henry in 2016.  She further alleges that she was given a provisional ballot rather than being instructed to vote in Henry County where she was registered. When she went to the DeKalb County Board of Elections to provide information proving her residence, she was not given confirmation that her vote would be counted.

It is unclear from her own declaration whether Ms. Lona Tate, the second prospective voter declarant, ever submitted a ballot. She alleges that she registered to vote in DeKalb County on October 9, 2018 – less than one month before the election – after relocating from Cobb County.  When informed by an assistant poll manager she was registered in Cobb County, she concluded she would be unable to do so and attempted to fill out a provisional ballot instead. When she went to turn the provisional ballot into the assistant manager, however, "she was nowhere to be found."  On November 9, 2018, Ms. Tate alleges she went to the DeKalb County

---

offer confirmation that provisional voters' ballots would be counted and attempted to turn away those who had not been sent to the Board by a poll workers.

Board of Elections at the direction of the Democratic Voter Hotline where she got into an argument with a receptionist who eventually told her she was "good to go."

In sum, Plaintiffs have not alleged that any person who was properly registered to vote was denied the ability to do so.  They have not alleged that anyone properly submitted absentee ballot was discarded.  And, they have not alleged that any provisional ballot was wrongly deemed improper.

## III.   <u>The Challenged Statutes</u>

Plaintiffs' constitutional challenges to the absentee and provisional ballot process and cry for emergency relief ring hollow.  The absentee ballot provision challenged by Plaintiffs – O.C.G.A. § 21-2-386 – has been a part of Georgia in some form since 1924.  It was last amended in 2012.  The provisional ballot statutory provision – O.C.G.A. § 21-2-419 – has been a part of Georgia law since 2002, and it was last amended when then-Representative Abrams served in the General Assembly, in 2010.

Plaintiffs have known about these processes, which have been in place for well-over a decade, and somehow claim that enforcing these provisions "this year" would be unconstitutional.  (<u>See</u> Pls.' Mot. at 10, 13, 16.)  Moreover, as early as the day after the Election, Plaintiffs began to issue numerous press releases and statements indicating they intend to challenge the election process to "make sure

that every ballot is counted."  <u>See</u> Stacey Abrams (@staceyabrams) https://twitter.com/staceyabrams (Nov. 7, 2018).  Despite these promises to initiate litigation, Plaintiffs waited until the last minute – the Sunday before a federal holiday and the deadline for counties to certify their election results – to file their Complaint.  They then waited until 4:00 pm the following day to request emergency relief from this Court.

While Plaintiffs' lawsuit trots out the usual campaign rhetoric, it fails to inform this Court of the significant burdens their relief will cause.  County election superintendents must certify the county's consolidated results **no later** than 5:00pm on the Monday following the date of the election and then transmit those certified returns to the Secretary of State.  O.C.G.A. § 21-2-493(K).   Given that Monday, November 12, 2018 was Veterans Day, counties have until 5:00pm **today**, November 13, 2018 to provide certification of their consolidated election results. Now, 101 out of the 159 counties have certified their election results, and requiring those counties to re-inspect the provisional ballots would further wreak havoc on an extremely tight deadline considering the impending run-off elections for two state-wide positions. In addition, the General Assembly puts a strict timeline of fourteen days for the Secretary of State to certify election results and the Secretary of State would need those county certifications prior to finalizing the statewide

certification.  The Georgia General Assembly inserted this specific timeframe into law for a number of important reasons.

Of particular importance to the case at hand, timely certification by counties is necessary to allow the Secretary of State sufficient time to prepare for and hold a runoff election.  See O.C.G.A. § 21-2-501(a)(4) (establishing deadline for any runoff after a general election); O.C.G.A. § 21-2-384(a)(1) (requiring absentee ballots for the runoff to be sent to voters "as soon as possible prior to any runoff."). There are two statewide runoff elections which must be held in 2018 - one for a seat on the Public Service Commission and the other for Secretary of State. Finally, the remedy Plaintiff seeks ultimately is of immaterial consequence. Even if every outstanding provisional ballot was counted and was voted for the Democratic candidate, the outcome of the election would not change.

## ARGUMENT AND CITATION TO AUTHORITY

### I.   Plaintiffs' Extraordinary Burden

Preliminary injunctions and temporary restraining orders are 'extraordinary and drastic remed[ies].'" Dekalb County Sch. Dist. v. Ga. Bd. of Educ., 2013 U.S. Dist. LEXIS 29535, *4 (N.D. Ga. Mar. 4, 2013) (citing Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985)).To obtain a temporary restraining order, Plaintiffs must demonstrate – by clear and convincing evidence – that they

will have (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued; and (4) an injunction would not disserve the public interest.  See Brown Bark II, L.P. v. Dixie Mills, LLC, 1:08-CV-1303-TWT, 2008 WL 11284843, at *1 (N.D. Ga. May 1, 2008) (citing Dunkin' Donuts, Inc. v. Kashi Enterprises, Inc., 106 F.Supp.2d 1325, 1326-27 (11th Cir. 2000); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1313 (11th Cir. 1998)).

The showing for a mandatory injunction like Plaintiffs seek is even more robust.[4]  In these circumstances, Plaintiffs "must make a **clear showing** of entitlement to the relief sought or demonstrate that **extreme or serious damage** would result absent the relief." Verizon Wireless Pers. Commc'n LP v. City of Jacksonville, Fla., 670 F. Supp. 2d 1330, 1346 (M.D. Fla. 2009) (emphasis added). "[M]andatory injunctions are rarely issued . . . except upon the clearest equitable grounds." United States v. Bd. of Educ. of Green Cty., Miss., 332 F.2d 40, 46 (5th

---

[4] As this Court is aware, a mandatory injunction seeks to compel action whereas a traditional injunction seeks only to maintain the status quo.  Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp., 441 F.2d 560, 561 (5th Cir. 1971); see also, Dantzler, Inc. v. Hubert Moore Lumber Co., 2013 U.S. Dist. LEXIS 78664 (M.D. Ga. June 5, 2013) ("Plaintiffs' request must be considered by the Court with greater scrutiny because the burden for a movant requesting a mandatory injunction is higher.").

Cir.1965); see Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976)

("Mandatory preliminary relief, which goes well beyond simply maintaining the

status quo pendente lite, is particularly disfavored").

 This is an incredibly high bar for Plaintiffs to meet, and they fall short.

First, Plaintiffs cannot show irreparable harm.  Second, Plaintiffs have an adequate

remedy at state law.  For this, and for the reasons set forth in the co-Defendants'

briefs, Plaintiffs' Motion, therefore, should be denied.

## II.    Plaintiffs Cannot Show Irreparable Harm.

 Plaintiffs cannot show irreparable harm by clear and convincing evidence for

two reasons.  First, despite making Georgia's absentee and provisional voting laws

an issue throughout their campaigns, Plaintiffs failed to raise their facial challenges

before the election or even immediately after the election.  Second, they have not

alleged, much less shown, that the relief they seek will change the outcome of the

gubernatorial election or any other election in Georgia.

### A. Plaintiffs' Delay Precludes the Issuance of a TRO.

 Plaintiffs have raised issues about Georgia election laws for months.  They

did not challenge the Election Code before the primary, nor did they file their

facial challenges to the relevant statutes months or weeks before the general

election.  Instead, they waited until well after the general election and the eve of

county certification to seek a wholesale rewriting of Georgia law.  The Eleventh Circuit has warned litigants against waiting until the last minute to challenge election statutes, and Plaintiffs must be aware of this.  See, e.g. Fla. State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1164 (11th Cir. 2008) (approving of injunction because, in part, the suit was filed well before the general election occurred).

Here, Plaintiffs' strategic decision to wait until after over 100 counties have certified their election results demonstrates that there is no imminent harm to warrant the imposition of a federal injunction.  "[C]ourts have frequently considered delay in initiating an action where . . . preliminary injunctive relief has been requested" and held that "delay is suggestive of a lack of irreparable harm." Calhoun v. Lillenas Publg., 298 F.3d 1228, 1235 (11th Cir. 2002).  As the Eleventh Circuit has observed, its "sister circuits and district courts within this Circuit and elsewhere have found that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." Wreal, LLC v. Amazon.com, 840 F.3d 1244, 1248 (11th Cir. 2016) (affirming district court's finding of absence of irreparable harm where preliminary injunction motion "relied exclusively on evidence that was available to [the plaintiff]" five months prior to the time the motion was filed).

"A delay in seeking a preliminary injunction of even only a few months – though not necessarily fatal – militates against a finding of irreparable harm."  Id. See also Regions Bank v. Kaplan, 2017 U.S. Dist. LEXIS 127803, *9 (M.D. Fla. Aug. 11, 2017) (Plaintiffs' five-month delay in filing action and seeking injunction after learning about allegedly fraudulent transfers "belie[d] [the Plaintiffs'' claim of an imminent and irreparable injury"); U.S. Bank Nat'l Ass'n v. Turquoise Props. Gulf, 2010 U.S. Dist. LEXIS 60882, 13-14 (S.D. Ala. June 18, 2010) (moving party's failure to act with reasonable diligence to protect its own interests after being on notice of the challenged conduct undercuts the movant's plea that it will suffer irreparable injury unless the court issues a mandatory injunction); Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2nd Cir. 1993) (holding that a party's delay in seeking an injunctive relief "severely undermines [its] argument that absent a stay irreparable harm w[ill] result").

Here, Plaintiffs challenge laws that were passed in last amended almost a decade ago.  They knew how these laws operated when they commenced their campaigns over a year ago.  The watched their operation during the primary, and they criticized them throughout the general election.  To say the least, Plaintiffs cannot be surprised by what the law says.

-14-

Given this, Plaintiffs cannot provide a logical reason as to why the waited until the evening before a federal holiday to file a complaint (and another full day to request a temporary restraining order).  Recognizing thi and that they lacke evidence of any Georgian being denied the right to vote, they argue that every voting rights case establishes irreparable injury.  (See generally, Pls.' Mot. at 17-20.)  Plaintiffs are wrong.  The Eleventh Circuit has never gone so far as to hold that "a violation of constitutional rights always constitutes irreparable harm," even in the election context.  Siegel v. LePore, 234 F.3d 1163, 1177 (11th Cir. 2000) (citations omitted).  Siegel involved a challenge to the Florida recount in the 2000 presidential election.  The plaintiff raised constitutional claims over the counting of ballots.  Id.  Nevertheless, the Eleventh Circuit affirmed the denial of a preliminary injunction because the plaintiffs' alleged harms could be "adequately remedied later."  Id. at 1177.  As shown below, the same is true here, and Plaintiffs' argument fails to overcome this binding precedent.  Id. Put simply, Plaintiffs' strategic decision to wait for months to legally challenge the statutes it attacked for months speaks volumes and precludes them from showing imminent harm caused by the operation of Georgia's Election Code.

**B.  Plaintiffs Have Not Alleged Any Change in the Election Will Occur**.

Plaintiffs do not appear to contend that the extraordinary relief they seek will or can change the outcome of the election.  See Pls.' Br. at 1-2.  To the contrary, they claim only that properly cast votes will not be counted and that deprivation, standing alone, warrants immediate and extraordinary relief.  Id.; see also Pls.' Br. at 17-20.  As shown, a deprivation of a constitutional right may lead to a cause of action, but it does not always provide the type of immediate and irreparable harm that warrants the imposition of an injunction, even in an election case.  LePore, 234 F.3d at 1177.

**III.    Current Law Provides An Adequate Remedy.**

To the extent Plaintiffs assert the relief they seek will change the outcome of an election, their claim to a TRO fails for another reason: Plaintiffs have adequate remedies at law.[5]  See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1229

---

[5] This is also true for the parts of the complaint that address provisional ballots.  A decision issued yesterday by this Court establishes a failsafe method of checking provisional ballots at either the state or county level.  See Common Cause Ga. v. Kemp, Civil Action No. 1:18-cv-5102-AT (N.D. Ga. Sept. 12, 2018. In that case, Judge Totenberg ordered that the Secretary of State delay certifying the statewide results until Friday, November 16.  In the interim, the Secretary must either (1) instruct those counties where over 100 provisional ballots were cast to take another look at those provisional ballots that were marked "PR" (not on the election database); or (2) conduct an independent review of those ballots.  Issuing any other type of relief now would create contradictory orders and thoroughly confuse the process.

(11th Cir. 2005) (precluding the imposition of a temporary restraining order where there is another adequate remedy at law).  This rule applies in challenges to state elections: "federal courts should refrain from holding a state election law unconstitutional when a reasonable alternative course of action exists."  <u>Roe v. State of Ala. By & Through Evans</u>, 43 F.3d 574, 582 (11th Cir. 1995), <u>certified question answered sub nom.</u> <u>Roe v. Mobile Cty. Appointment Bd.</u>, 676 So. 2d 1206 (Ala. 1995).

Here, Georgia law properly addresses Plaintiffs' claims, each of which are essentially challenges to the 2018 election process administered by the State of Georgia.  Chapter 5 of Title 21 spells out a very well-settled and longstanding procedure for challenging elections in this State.  <u>See generally</u> O.C.G.A. §§ 21-2-520 through 21-2-529.  Specifically, a candidate for Governor, and any other candidate for federal or state office, may bring a contest under Georgia law if "illegal votes have been received **or legal votes [have been] rejected** at the polls sufficient to change or place in doubt the result."  O.C.G.A. § 21-2-522(3) (emphasis added).  In addition, an election challenge will lie if "any error in counting the votes or declaring the result." O.C.G.A § 21-2-522(4).  These statutes address the crux of Plaintiffs' theory.

---

A copy of Judge Totenberg's decision in <u>Common Cause Georgia</u> is attached as "Exhibit 3."

The process for adjudicating the substance of Plaintiffs' claims is also quick, clear, and fair, and Georgia's appellate and trial courts have routinely handled such contests in a timely manner.  Jurisdiction resides in the superior court and is properly filed within five days of certification.  O.C.G.A. § 21-2-524(a).  There is a time limit on setting a hearing (within twenty days) and the challenging party can even demand a trial by jury to resolve the contest.  O.C.G.A. § 21-2-525(a).  There is a direct right of appeal to the Supreme Court of Georgia, and that the court may issue a stay or supersedeas immediately prior to the docketing of any notice of appeal.  O.C.G.A. § 21-2-528.  And, if the Plaintiffs are unsatisfied with this approach, they also have the remedy of quo warranto available to them.  See, e.g., White v. Miller, 235 Ga. 192 (1975).

Plaintiffs do not even make a faint reference to these laws despite challenging numerous other aspects of the Election Code.  It appears that Plaintiffs may be intentionally avoiding the available and appropriate method of challenging an election because they simply do not have a factual basis for doing so.  See Walls v. Garrett, 247 Ga. 640 (1981) (burden rests with challenging party whether rejected votes would actually change or place in doubt the election result).  Whatever their reason may be, to the extent Plaintiffs believe this Court can issue

relief that can impact the outcome of the election, it is clear that they have adequate remedies at law.

This Court should not be forced to intervene in the administration of the State of Georgia's election processes until after such election contests procedures are allowed to proceed.  In addition, Plaintiffs' facial challenges may continue regardless of the status of the election.

**C**ONCLUSION

The Republican Party has an interest in making sure that the rules of elections are not changed in the last minutes of the fourth quarter.  If Plaintiffs wanted to challenge Georgia's absentee ballot and provisional ballot mechanisms, they have had plenty of time to do so.  For whatever reason, they chose to wait.  The chose not to challenge the law before the primary. They waited throughout the general election campaign.  They even waited until the eve of county certification before seeking a temporary restraining order.  All the while, Plaintiffs have used their legal theories as a means of raising funds for what may be a more proper lawsuit: one brought under state law that challenges the election pursuant to O.C.G.A. §§ 21-2-520 through 21-2-529.

Plaintiffs can challenge the constitutionality of the Georgia Election Code without a temporary restraining order.  They can challenge the election itself without federal intervention.  They should be compelled to do so, and this Court should deny the Motion.

This 13th day of November, 2018.

/s/ Josh Belinfante

Josh Belinfante
Georgia Bar No. 047399
W. Ryan Teague
Georgia Bar No. 701321
Vincent R. Russo
Georgia Bar No.  242628
Kimberly Anderson
Georgia Bar No. 602807
Brian E. Lake
Georgia Bar No.  575966
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, NW,
Atlanta, Georgia  30318
Telephone:   (678) 701-9381
Facsimile:   (404) 856-3250

## **L.R. 7.1(D) CERTIFICATION**

I certify that this pleading has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this pleading has been prepared using 14-pt Times New Roman Font.

*/s/ Josh Belinfante*
Josh Belinfante

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing

**<u>INTERVENOR DEFENDANT GEORGIA REPUBLICAN PARTY'S BRIEF</u>**

**<u>IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY</u>**

**<u>RESTRAINING ORDER</u>** with the Clerk of Court using the CM/ECF system,

which automatically sent counsel of record e-mail notification of such filing.

This 13th day of November, 2018.


*<u>/s/ Josh Belinfante</u>*

Josh Belinfante